## LOPER *v.* BETO, CORRECTIONS DIRECTOR, ET AL.

No. 70–5388. Argued January 13, 1972—Decided March 22, 1972

STEWART, J., announced the Court's judgment and delivered an opinion, in which DOUGLAS, BRENNAN, and MARSHALL, JJ., joined. WHITE, J., filed an opinion concurring in the result, *post*, p. 485. BURGER, C. J., filed a dissenting opinion, in which POWELL, J., joined,

474

*post,* p. 485. BLACKMUN, J., filed a dissenting opinion, *post,* p. 494. REHNQUIST, J., filed a dissenting opinion, in which BURGER, C. J., and BLACKMUN and POWELL, JJ., joined, *post,* p. 497.

*John T. Cabaniss,* by appointment of the Court, 404 U. S. 954, argued the cause for petitioner. With him on the brief was *Dan G. Matthews.*

*Robert Darden,* Assistant Attorney General of Texas, argued the cause for respondents. With him on the brief were *Crawford C. Martin,* Attorney General, *Nola White,* First Assistant Attorney General, *Alfred Walker,* Executive Assistant Attorney General, and *Robert C. Flowers,* Assistant Attorney General.

MR. JUSTICE STEWART announced the judgment of the Court and an opinion in which MR. JUSTICE DOUGLAS, MR. JUSTICE BRENNAN, and MR. JUSTICE MARSHALL join.

The petitioner, Otis Loper, was brought to trial in a Texas criminal court in 1947 upon a charge of statutory rape. The alleged victim, Loper's 8-year-old step-daughter, was the only witness who identified him as the perpetrator of the crime. The sole witness for the defense was Loper himself, who testified that he had not assaulted the victim in any way. For the purpose of impeaching Loper's credibility, the prosecutor was permitted on cross-examination to interrogate Loper about his previous criminal record. In response to this line of questioning, Loper admitted in damaging detail to four previous felony convictions during the period 1931–1940, three in Mississippi and one in Tennessee.[1]

---

[1] "Q. During the past ten years how many times have you been indicted and convicted in this State or any other State for a felony?

"A. About twice in the past ten years.

"Q. How about on May 7th, 1940, weren't you arrested . . .

"MR. LETTS: Your honor, I object to that, as to his being arrested, as that is not admissible in this case.

[*Footnote 1 continued on p. 475*]

At the conclusion of the one-day trial the jury found Loper guilty as charged and sentenced him to a term of 50 years in prison.

---

"THE COURT: Well, let him finish the question, Mr. Letts.

"Q. All right, On May 7th, 1940, what were you indicted and convicted for?

"A. Burglary.

"Q. Where was that?

"A. Carthage, Mississippi.

"Q. What did you get for that?

"A. Five years in the penitentiary.

"Q. On January 15th, 1935, what were you indicted and convicted for then?

"A. Burglary.

"MR. LETTS: We object, your honor, as that has been over ten years.

. . . . .

"Q. What were you indicted, tried and convicted for then on January 15th, 1935, in Brushy Mountain Parish, Petros, Tennessee?

"A. Burglary.

"Q. What did you get for that?

"A. Four years.

"Q. How about October 27th, 1931, what . . .

"MR. LETTS: Your honor, we object to that and ask the Court to instruct the jury not to consider it. That reaches way back to 1931 and the Court knows it would prejudice and inflame the minds of the jury in this case.

"THE COURT: Objection over-ruled.

. . . . .

"Q. Where were you arrested on November 29th, 1934?

"A. In Chattanooga, Tennessee.

"Q. What about October 27th, 1931, what were you convicted for in Parchman, Mississippi, then?

"A. Burglary.

"Q. What did you get for that?

"A. Six months, I think.

"Q. There have been so many offenses you have committed that you can't remember them straight, can you?

"MR. LETTS: We object to that remark, your honor.

"THE COURT: Objection sustained.

[*Footnote 1 continued on p. 476*]

Loper initiated the present habeas corpus proceeding in the United States District Court for the Southern District of Texas in 1969. He alleged, among other things, that the previous convictions used to impeach his credibility at the trial were constitutionally invalid under *Gideon* v. *Wainwright,* 372 U. S. 335, because he had been denied the assistance of counsel in the Mississippi and Tennessee courts that had convicted him.[2]

"Q. It was for burglary in 1931?

"A. Yes.

"Q. Have you always gone by the name of Otis Loper?

"A. Not always.

"Q. What other names have you gone by?

"A. Milton Cummings.

"Q. That was in Mississippi, wasn't it?

"A. Yes sir.

"Q. What were you indicted and tried for on that case in Mississippi in 1932?

"A. Burglary.

"Q. How much time did you get on that conviction?

"A. Two years.

"Q. And that was under the name of Milton Cummings?

"A. Yes.

"Q. And that is 4 times that you have been convicted of burglary, a felony?

"A. Yes.

"MR. DUGGAN: That's all, no more questions."

[2] Loper's petition was originally dismissed by the District Court, but the Court of Appeals vacated the dismissal and remanded for an evidentiary hearing on the question whether Loper had been deprived of his right to appeal from the Texas judgment of conviction. 383 F. 2d 400. On remand, the District Judge, noting that Loper had filed numerous habeas corpus petitions over a period of 20 years, appointed counsel to represent Loper and directed him to raise any points that "conceivably might be raised in his behalf," in order that a single evidentiary hearing could serve to put an end to postconviction litigation in Loper's case. Loper, with the assistance of counsel, then advanced six claims, and the evidentiary hearing was directed to resolving all six contentions. The claim at issue here had not been raised in any of Loper's previous petitions.

His sworn testimony at the habeas corpus hearing con-
firmed these allegations.[3] In addition, he produced court

---

[3] "Q. Were you convicted in 1931 of burglary in Scott County,
Mississippi?

"A. Yes, sir.

"Q. How old were you at this time?

"A. I don't remember, but I believe I was around 17 years, some-
thing around that age. I'm not for sure.

"Q. Were you represented by an attorney in connection with that
proceeding?

"A. No, sir, I didn't have an attorney.

"Q. Were you advised that you had a right to an attorney whether
you could afford one or not?

"A. No, sir.

"Q. Did you know that you were entitled to one whether you could
afford one or not?

"A. No, sir.

"Q. Did you inform the court that you did not want to be repre-
sented by an attorney?

"A. No, sir.

"Q. Were you convicted in that proceeding?

"A. Yes, sir.

"Q. Were you convicted, Mr. Loper, of burglary in 1940 in Leake
County, Mississippi?

"A. Yes, sir.

"Q. How old were you at the time that occurred?

"A. I believe I was about 25 or 26, I don't remember for sure.

"Q. Let me ask you one more question about that Scott County,
Mississippi, conviction. Did you plead guilty or not guilty?

"A. I plead guilty.

"Q. Were you sentenced to a term in prison?

"A. Yes, sir.

"Q. All right, sir. Now, in connection with the 1940 conviction,
were you represented by an attorney?

"A. No, sir.

"Q. At any stage of the proceedings?

"A. No, sir.

"Q. Were you advised that you had a right to an attorney whether
you could afford one or not?

records to corroborate this testimony.[4] The District Court denied habeas corpus relief, placing "little or no credence" in Loper's testimony, and holding that in any event "the question does not rise to constitutional stature and is not subject to collateral attack."[5]

On appeal, the Court of Appeals for the Fifth Circuit

"A. No, sir.

"Q. Could you in fact afford one?

"A. I don't believe I could have then.

"Q. What about 1931, the conviction in Scott County, Mississippi, could you have afforded an attorney?

"A. I couldn't have, no, sir.

"Q. Did you know in connection with the 1940 proceeding that you were entitled to be represented by counsel whether you could afford it or not?

"A. No, sir.

"Q. Did you inform the court that you did not want to be represented by an attorney?

"A. No, sir.

"Q. Was the 1940 proceeding in Leake County, Mississippi, did you plead guilty or not guilty?

"A. Not guilty.

"Q. Was a trial held?

"A. Yes, sir.

"Q. Who conducted the defense in that trial?

"A. Well, there wasn't anybody. I just didn't know what to ask the people. I didn't know anything about how to.

"Q. Did you conduct your own trial?

"A. As far as it was conducted, yes, sir.

"Q. Why did you attempt to do so yourself?

"A. Well, I didn't have an attorney, and nobody to help me. I didn't want to plead guilty to it."

[4] A certified record of the 1940 proceeding in Leake County, Mississippi, recited that Loper appeared "in his own proper person." A certified copy of the 1935 proceeding in Hamilton County, Tennessee, recited that Loper appeared "in person." A certified copy of the 1931 proceeding in Scott County, Mississippi, recited simply that Loper and his codefendants "entered pleas of guilty, as charged in the indictment." No record was introduced of the 1932 conviction in Mississippi.

[5] The memorandum and order of the District Court are unreported.

affirmed the judgment of the District Court. Although recognizing "the force of Loper's argument to the effect that such convictions may have impaired his credibility in the minds of the jury as a witness in his own behalf," the appellate court held that "the use of such convictions as evidence for purposes of impeachment which goes only to credibility, is not nearly so serious as the use of a conviction for enhancement, which may add years of imprisonment to the sentence of a defendant. . . . The issue presented raises an evidentiary question. The fact that there are possible infirmities in the evidence does not necessarily raise an issue of constitutional proportions which would require reversal." 440 F. 2d 934, 937.[6]

---

[6] A dissenting opinion, *post,* at 502, implies that the District Court found that the petitioner did not meet his burden of proving that he had not waived his right to counsel in the Mississippi and Tennessee courts. But no such finding appears in the record. The District Court did say that "there is no evidence other than petitioner's own statement *that he was not represented by counsel* at the time of his prior convictions, which evidence, as stated above, I decline to accept as credible." (Emphasis added.) This statement is wholly incorrect, for Loper did introduce documentary evidence to corroborate his testimony that he had not been represented by counsel on at least two of his prior convictions. See n. 4, *supra.* Nowhere in the District Court's opinion is there any finding of fact as to whether Loper might have *waived* counsel. And the fact that the challenged convictions occurred at a time when, under our decisions, state courts were under no constitutional obligation to provide lawyers to indigent defendants in all felony cases, would make any such finding highly unrealistic, in the face of the documentary evidence and the petitioner's uncontradicted testimony. For, at the time of the petitioner's previous convictions, there was no known constitutional right to be "waived."

Moreover, the judgment that we review today is not that of the District Court, but of the Court of Appeals. That court stated:

"The convictions mentioned have been of record for a number of years, yet the record before us does not disclose that any attack has ever been made upon those convictions. Except for the assertions of Loper the record fails to furnish any conclusive information

We limited our grant of certiorari to a single constitutional question, worded as follows in the petition for certiorari: Does the use of prior, void convictions for impeachment purposes deprive a criminal defendant of due process of law where their use might well have influenced the outcome of the case? 404 U. S. 821. This is a recurring question that has received conflicting answers in the United States Courts of Appeals.[7] It is a question that has also divided state appellate courts.[8]

---

as to the facts and circumstances surrounding his former convictions. So far as the record before us reveals, there are outstanding, unchallenged, state court convictions of felonies in the States of Mississippi and Tennessee. . . . [I]f the convictions possessed the infirmities which Loper claims, he has failed to make any effort to set them aside for over 30 years. No one else could have done so. Surely such an attack was available to him in view of the retroactive application of the *Gideon* decision which was decided over six years prior to the hearing under review." 440 F. 2d, at 937.

But despite these observations, the Court of Appeals, perhaps recognizing the error in the statement of the District Court quoted above, did not rest its decision on a finding that the petitioner had failed to meet his burden of proving the invalidity of the prior convictions. It reached the merits of the legal question involved, and we granted certiorari to review that decision. There is thus no basis in the record upon which we may either dismiss this case or affirm the decision below on the ground that the petitioner did not meet his burden of proving that the prior convictions were invalid. See *Burgett* v. *Texas,* 389 U. S. 109, 114–115; *Losieau* v. *Sigler,* 406 F. 2d 795, 803; *Williams* v. *Coiner,* 392 F. 2d 210, 212–213.

The dissenting opinion relies upon our decision last Term in *Kitchens* v. *Smith,* 401 U. S. 847. Yet we held in that case that the petitioner on collateral review had sufficiently "proved he was without counsel due to indigency at the time of his [1944] conviction," even though, unlike the present case, the petitioner "introduced no evidence other than his own testimony." *Id.,* at 849.

[7] Compare the decisions in this case and in *Walker* v. *Follette,* 443 F. 2d 167 (CA2 1971), with *Gilday* v. *Scafati,* 428 F. 2d 1027 (CA1 1970); *Tucker* v. *United States,* 431 F. 2d 1292 (CA9 1970); and *Howard* v. *Craven,* 446 F. 2d 586 (CA9 1971).

[8] *Simmons* v. *State,* 456 S. W. 2d 66 (Ct. Crim. App. Tex. 1970), holds that prior convictions obtained without the benefit of counsel

The starting point in considering this question is, of course, *Gideon* v. *Wainwright,* 372 U. S. 335. In that case the Court unanimously announced a clear and simple constitutional rule: In the absence of waiver, a felony conviction is invalid if it was obtained in a court that denied the defendant the help of a lawyer.[9]

The Court dealt with a sequel to *Gideon* in *Burgett* v. *Texas,* 389 U. S. 109. There a Texas indictment charging the petitioner with assault contained allegations of previous felony convictions, that, if proved, would have increased the punishment for assault under the state recidivist statutes. The indictment was read to the jury at the beginning of the trial. Records of two of the previous convictions were offered in evidence during the course of the trial, and it appeared that at least one of these convictions had been obtained in violation of *Gideon.* In reversing the Texas judgment, the Court said:

> "To permit a conviction obtained in violation of *Gideon* v. *Wainwright* to be used against a person either to support guilt or enhance punishment for another offense . . . is to erode the principle of that case. Worse yet, since the defect in the prior conviction was denial of the right to counsel, the accused in effect suffers anew from the deprivation of that . . . right." 389 U. S., at 115.

Earlier this Term we had before us a case in which it appeared that previous convictions obtained in viola-

---

may nevertheless be used for the purpose of impeachment. Most reported state decisions, however, hold the contrary. See *Spaulding* v. *State,* 481 P. 2d 389 (Alaska 1971); *In re Dabney,* 71 Cal. 2d 1, 452 P. 2d 924 (1969); *Johnson* v. *State,* 9 Md. App. 166, 263 A. 2d 232 (1970); *White* v. *State,* 11 Md. App. 423, 274 A. 2d 671 (1971); *Subilosky* v. *Commonwealth,* —— Mass. ——, 265 N. E. 2d 80 (1970) (semble).

[9] This constitutional rule is wholly retroactive. *Pickelsimer* v. *Wainwright,* 375 U. S. 2; *Kitchens* v. *Smith,* 401 U. S. 847.

tion of *Gideon* had played a part in the determination of the length of a convicted defendant's prison sentence. *United States* v. *Tucker,* 404 U. S. 443. We there ruled that the Court of Appeals for the Ninth Circuit had been correct in holding that the teaching of *Burgett* required a remand of the case to the trial court for resentencing.

The *Tucker* case involved only that aspect of *Burgett* that prohibits the use of invalid prior convictions to "enhance punishment." The case now before us involves the use of such convictions "to support guilt." [10] For the issue of innocence or guilt in this case turned entirely on whether the jury would believe the testimony of an 8-year-old girl or that of Loper. And the sole purpose for which the prior convictions were permitted to be used was to destroy the credibility of Loper's testimony in the eyes of the jury.[11]

---

[10] Under Texas law at the time, the jury, upon finding Loper guilty, was authorized in its absolute and unreviewable discretion to impose any punishment from five years in prison to death in the electric chair. Texas Pen. Code, Art. 1189 (1948). Thus, bringing the prior convictions to the attention of the jury may well also have served to enhance Loper's punishment.

[11] This is not a case where the record of a prior conviction was used for the purpose of directly rebutting a specific false statement made from the witness stand. Cf. *Walker* v. *Follette,* 443 F. 2d 167, and see *Harris* v. *New York,* 401 U. S. 222; *Walder* v. *United States,* 347 U. S. 62. The previous convictions were used, rather, simply in an effort to convict Loper by blackening his character and thus damaging his general credibility in the eyes of the jury.

That a record of prior convictions may actually do more than simply impeach a defendant's credibility has been often noted. See, *e. g.,* C. McCormick, Evidence § 43, p. 93 (1954):

"The sharpest and most prejudicial impact of the practice of impeachment by conviction . . . is upon one particular type of witness, namely, the accused in a criminal case who elects to take the stand. If the accused is forced to admit that he has a 'record' of past convictions, particularly if they are for crimes similar to the one on

Unless *Burgett* is to be forsaken, the conclusion is inescapable that the use of convictions constitutionally invalid under *Gideon* v. *Wainwright* to impeach a defendant's credibility deprives him of due process of law.[12] We can put the matter no better than in the words of the Court of Appeals for the First Circuit:

> "We conclude that the *Burgett* rule against use of uncounseled convictions 'to prove guilt' was intended to prohibit their use 'to impeach credibility,' for the obvious purpose and likely effect of impeaching the defendant's credibility is to imply, if not prove, guilt. Even if such prohibition was not originally contemplated, we fail to discern any distinction which would allow such invalid convictions to be used to impeach credibility. The absence of counsel impairs the reliability of such convictions just as much when used to impeach as when used as direct proof of guilt." *Gilday* v. *Scafati*, 428 F. 2d 1027, 1029.

A dissenting opinion filed today suggests that our decision presses the "sound doctrine of retroactivity beyond the outer limits of its logic." On the contrary, our decision in this case follows directly from the rationale under which *Gideon* v. *Wainwright, supra,* was given retroactive application. We have said that the principle

---

trial, the danger is obvious that the jury, despite instructions, will give more heed to the past convictions as evidence that the accused is the kind of man who would commit the crime on charge, or even that he ought to be put away without too much concern with present guilt, than they will to its legitimate bearing on credibility."

[12] In the circumstances of this case there is little room for a finding of harmless error, if, as appears on the record now before us, Loper was unrepresented by counsel and did not waive counsel at the time of the earlier convictions. Cf. *Subilosky* v. *Moore*, 443 F. 2d 334; *Tucker* v. *United States*, 431 F. 2d 1292; *Gilday* v. *Scafati*, 428 F. 2d 1027.

established in *Gideon* goes to "the very integrity of the fact-finding process" in criminal trials, and that a conviction obtained after a trial in which the defendant was denied the assistance of a lawyer "lacked reliability." *Linkletter* v. *Walker,* 381 U. S. 618, 639 and n. 20. Loper has "suffered anew" from this unconstitutional deprivation, *Burgett* v. *Texas, supra,* regardless of whether the prior convictions were used to impeach him before or after the *Gideon* decision. It would surely be unreasonable, as one dissenting opinion suggests, to expect the judge at Loper's trial to have anticipated *Gideon,* just as it would have been unreasonable to have expected the judge at Gideon's trial to have foreseen our later decision in that case. But a necessary result of applying any decision retroactively is to invalidate rulings made by trial judges that were correct under the law prevailing at the time the judges made them.[13] If the retroactivity of *Gideon* is "sound," then this case cannot be decided under the ill-starred and discredited doctrine of *Betts* v. *Brady,* 316 U. S. 455.

The judgment before us is set aside, and the case is remanded to the Court of Appeals for further proceedings consistent with this opinion.

*It is so ordered.*

---

[13] The reasoning of that dissenting opinion would dictate that the rule in *Burgett* must not be given retroactive application, at least to cases where the sentence was imposed prior to *Gideon.* Yet, by our disposition of *Bates* v. *Nelson,* 393 U. S. 16, where we vacated and remanded in light of *Burgett* a denial of habeas corpus following a 1957 conviction, we indicated that *Burgett* is retroactive in its application without regard to whether the use of the prior convictions was made prior to or after *Gideon.* Every federal court that has considered the question has held *Burgett* retroactive, and none has made the distinction suggested by the dissenting opinion. See, *e. g., Walker* v. *Follette,* 443 F. 2d 167 (CA2 1971); *Losieau* v. *Sigler,* 406 F. 2d 795 (CA8 1969); *Tucker* v. *Craven,* 421 F. 2d 139 (CA9 1970); *Oswald* v. *Crouse,* 420 F. 2d 373 (CA10 1969).

MR. JUSTICE WHITE, concurring in the result.

The Court of Appeals affirmed the denial of Loper's petition for habeas corpus, reasoning that the use of invalid prior convictions to impeach a defendant in a criminal case does not raise an issue of constitutional proportions even though so using those convictions might well have influenced the outcome of the case. It was on that issue that we granted certiorari; and as our past cases now stand, I agree with MR. JUSTICE STEWART that the Court of Appeals' reasons for affirming the District Court were erroneous. This judgment, however, does not necessarily mean that Loper's conviction must be set aside. There remain issues, unresolved by the Court of Appeals, as to whether the challenged prior convictions were legally infirm: was Loper represented by counsel at the time of the earlier convictions; if not, did he waive counsel? These matters are best considered in the first instance by the Court of Appeals. The same is true with respect to the legal significance of the lack of proof with respect to the validity of one or more of the prior convictions used for impeachment purposes at Loper's trial. In this connection, I do not understand our prior decisions to hold that there is no room in cases such as this for a finding of harmless error; and if this case is ultimately to turn on whether there was harmless error or not, I would prefer to have the initial judgment of the lower court.

MR. CHIEF JUSTICE BURGER, with whom MR. JUSTICE POWELL joins, dissenting.

In 1942 this Court, in deciding *Betts* v. *Brady,* 316 U. S. 455, held that the Due Process Clause of the Fourteenth Amendment did not call for the setting aside of a robbery conviction that had been entered against an indigent defendant whose request for appointed coun-

sel had been denied by the state trial court. *Betts* was overruled in 1963 by *Gideon* v. *Wainwright,* 372 U. S. 335. Loper's trial for rape was held five years after *Betts* and 16 years before *Gideon.* Yet the Court today holds that an error of constitutional magnitude occurred when the judge presiding at Loper's trial failed to make, on his own motion, an *evidentiary ruling* that would have been inconsistent both with state law and with the United States Constitution as then explicitly interpreted by this Court. I dissent.

## (1)

Three witnesses were called at Loper's 1947 trial. His eight-year-old stepdaughter testified that Loper raped her on August 9, 1947. A physician gave testimony corroborating that the child had been raped. Loper himself denied having committed the act, but admitted that there was a period of time during the day in question when he was at home alone with his stepdaughter and his four-month-old baby boy; he further admitted on cross-examination that his stepdaughter was, as far as he knew, a truthful child.

Under further cross-examination, Loper admitted to four prior burglary convictions entered against him in 1931, 1932, 1935, and 1940, respectively. At the 1969 habeas corpus proceeding here under review, Loper introduced court records relating to three of these burglary convictions and gave testimony relating to two of those three. The evidence presented to the District Court with respect to the four convictions may be summarized as follows:

> (a) The court records for the 1931 conviction indicated only that Loper pleaded guilty upon being arraigned and that a six-month sentence was imposed nine days later. Loper testified before the District Court that he was not represented by an

attorney in connection with these 1931 proceedings; that he could not then have afforded private counsel; and that he never informed the trial court that he did not want to be represented by counsel.

(b) Loper introduced no court record and gave no testimony at all with respect to his 1932 conviction.

(c) Loper gave no testimony with respect to his 1935 conviction, but the court record of that conviction appears on its face to suggest that he was represented by counsel: "Came the Attorney General and the defendant in person, and this case was tried . . . before the Court and the . . . jury . . . [whose members,] having heard the proof, *arguments of Counsel* and the charge of the Court[,] on oath say defendant is guilty . . . ." (Emphasis added.)

(d) The court record of Loper's 1940 conviction recited that Loper appeared "in his own proper person." Loper testified before the District Court that he did not have counsel at his 1940 trial; that he did not "believe" he could then have afforded private counsel; and that he never informed the state court that he did not want to be represented by counsel.

Even if we, unlike the District Court,[1] treat as absolutely true everything to which Loper testified at the habeas corpus hearing, there is no basis on which we can conclude that he was not represented by counsel in the proceedings leading to his 1932 and 1935 convictions. With respect to the 1940 conviction, it surely cannot be said that Loper, through his testimony that he does

---

[1] The District Court, after observing Loper and hearing him testify, stated that "petitioner has made false statements under oath, and has testified to a set of facts so roundly and thoroughly shown to be false by unimpeachable evidence that little or no credence may be placed in his own testimony . . . ."

not now "believe" that he then could have afforded private counsel, met his "burden of proving his inability at that time to hire an attorney." *Kitchens* v. *Smith,* 401 U. S. 847, 848 (1971). There is no basis, then, for a retroactive application of *Gideon* v. *Wainwright* to bring into question the validity of his 1940 burglary conviction.

It thus appears that of the four convictions introduced to impeach Loper's credibility at his 1947 rape trial, only the burglary conviction of 1931—a conviction entered upon Loper's plea of guilty—can reasonably be found on this record to have been even arguably invalid under *Gideon.*

### (2)

When a defendant in a criminal trial elects to testify on his own behalf, he asks the jury, in effect, to believe his testimony rather than any conflicting testimony introduced by the prosecution. He presents himself to the jury as a person worthy of belief. In so doing, he brings into issue his credibility as a witness, and he thereby exposes himself to possible cross-examination designed to impeach that credibility. Such cross-examination is limited by state rules of evidence, of course, to matters which are relevant to credibility and which are not, at the same time, so prejudicial to the defendant that they must be excluded despite their relevance. Each State's rules governing such cross-examination reflect a balance that has been struck by that State in weighing, with respect to a given category of evidence, its probative value for impeachment purposes against the prejudicial effect it might have upon the jury's determination of the defendant's guilt or innocence of the crime charged.[2]

---

[2] Cf. *Michelson* v. *United States,* 335 U. S. 469 (1948), where this Court was called upon to strike a somewhat similar balance with respect to cross-examination designed to impeach the credibility of

The plurality opinion concludes that the Due Process Clause was violated if one or more of the prior convictions used to impeach Loper's credibility, even though fully valid under *Betts* v. *Brady*—the prevailing law when Loper was tried in 1947—was rendered constitutionally infirm by *Gideon*. The plurality opinion does not make clear, however, whether evidence of any such convictions is considered to be so lacking in probative value as to violate due process or to be so prejudicial as to do so. If its conclusion were grounded solely on a consideration of undue prejudice, the rationale underlying today's decision would be elusive indeed. There is no suggestion in the record that the jury might have failed to follow the instructions given by the trial judge that consideration of these prior convictions was to be restricted solely to the issue of Loper's credibility. Nor can any plausible contention be made that a jury has more difficulty following such instructions when it is dealing with an uncounseled conviction than when it is dealing with a counseled one.

It must be, then, that the conclusion of the plurality opinion is based upon the view that it is fundamentally unfair for a jury to be allowed to treat an uncounseled conviction, introduced to impeach a defendant, as though it had the probative value of a counseled conviction. Under this view, jurors who are told of a prior uncounseled conviction are misled in regard to a matter of *fact;*

---

character witnesses who claim to be familiar with a defendant's reputation in the community. The Court held that when a defendant in a federal trial puts his character in evidence by calling such witnesses, the government may cross-examine those witnesses to determine whether they are aware of any prior arrests that may be on the defendant's record and that may consequently have affected his reputation. The Court reasoned that, despite the possibility of prejudice, "[t]o hold otherwise would give defendant the benefit of testimony that he was honest and law-abiding *in reputation* when such might not be the fact . . . ." *Id.,* at 484 (emphasis added).

*i. e.,* by being told merely that the defendant was in fact previously convicted of a felony, they are misled into believing that he was *duly* convicted when, under a retroactive application of *Gideon,* he in fact was not duly convicted. I cannot agree that such a view justifies a finding here that it was fundamentally unfair of the trial judge at Loper's 1947 rape trial to fail to make an evidentiary ruling, on his own motion, that he could have justified only by anticipating by 16 years this Court's overruling of *Betts* v. *Brady* in 1963. Not even the wisest member of this Court could have hazarded that prediction in 1947.

The plurality opinion, of course, does not analyze the case in these terms. It merely concludes, under a rigidly mechanistic approach, that since this Court held in *Gideon* that an uncounseled felony conviction calls for a new trial with counsel, we are compelled to strike down a fully counseled pre-*Gideon* conviction obtained through a trial in which evidence of one or more prior uncounseled convictions was collaterally used. This, of course, gives *Gideon* a collateral consequence of wholly unrealistic dimensions that are unrelated to basic fairness or due process; it is an effort to "unring the bell" on a series of burglary convictions dating back to a period 41 years ago. Parenthetically, I note that Loper nowhere denies that he committed these burglaries.

We all agree that the convictions used to impeach Loper's credibility during the 1947 trial were valid under the law prevailing at that time. The jury at Loper's 1947 trial cannot, therefore, be said to have been misled in regard to any contemporaneous matter of fact. Nor can it be said, without distorting the doctrine of retroactivity beyond all semblance of rationality and common sense, that the prosecutor or the presiding judge at Loper's rape trial acted in violation of the principle of "fundamental fairness." If Loper's trial was "funda-

mentally fair" when it was conducted, how can it be said to have undergone a metamorphosis because—16 years later and for another purpose—the law changed?

When we held that *Gideon* is retroactive, we meant that *Gideon* applies to an uncounseled felony conviction obtained in the past and renders *that conviction* invalid for all *future* purposes, *i. e.*, it renders unlawful the continuation into the future of the convicted prisoner's incarceration unless a new trial is had. *Gideon* does not, however, render such a conviction retroactively invalid for all purposes to which it may have already been put *in the past*. The Court, in giving such an enlarged effect to *Gideon*, plows new ground, disregarding the implications that will surely follow from the broadening of scope it now gives to the doctrine of retroactivity. For there must be many convictions that will be senselessly rendered vulnerable to attack by today's holding.

The Court applies the doctrine of retroactivity as though it required us to assess the fairness of past judicial proceedings without making any distinctions between a decision that was rendered *after* those proceedings and given retroactive effect, and a decision that was rendered *before* those proceedings; the Court thus seems to view the doctrine of retroactivity as requiring us to judge the fairness of Loper's 1947 rape trial as though that trial followed *Gideon*. Had the trial indeed followed *Gideon*, and had the trial judge permitted the prosecution to use prior uncounseled convictions to impeach Loper, then it might well be said that the judge denied fundamental fairness to Loper in refusing to follow the clear teaching of a decision of this Court and in thereby "erod[ing] the principle" of that decision. *Burgett* v. *Texas*, 389 U. S. 109, 115 (1967). We are, however, presented with no such situation here. The judge at Loper's trial did not refuse to follow any decision of this Court. Indeed, had he made the ruling

that the Court today implicitly holds he was required to make, he would have been very specifically refusing thereby to follow this Court's then-controlling decision in *Betts* v. *Brady*.

The plurality opinion states that "[i]f the retroactivity of *Gideon* is 'sound,' then this case cannot be decided under the ill-starred and discredited doctrine of *Betts* v. *Brady* . . . ." If we are precise, of course, this case is not to be "decided under" either *Betts* or *Gideon*, for it raises an entirely different question from that which the Court faced in those two cases. Both *Betts* and *Gideon* dealt with the *substantive* right to counsel in a state felony trial. The instant case deals with the collaterally related, but altogether different, question of the fundamental fairness of an implied *evidentiary ruling* made long before *Gideon*. The failure of the plurality opinion to recognize this simple, albeit crucial, distinction unfortunately prevents the drawing of a rational line that would preserve all the values of both *Gideon* and *Burgett* without at the same time producing the extravagant result reached by the Court today.

The introduction, in good faith and without objection, of lawfully admissible evidence, the truth of which is not presently subject to challenge, can hardly be called a violation of due process. Nor will such a violation arise retroactively by the occurrence of later events that may give grounds for challenging the truth of that evidence. Cf. *Townsend* v. *Sain*, 372 U. S. 293, 317 (1963): "[T]he existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus." In 1947, Loper's prior burglary convictions, viewed as matters of evidentiary fact in the light of this Court's then-recent decision in *Betts* v. *Brady*, were valid convictions. Being valid in 1947, they were then admissible in evidence to impeach Loper's credibility. This Court's decision in *Gideon* 16 years

later may have rendered one or more of those convictions vulnerable to attack and not usable for *future* evidentiary or other purposes. Bearing in mind, however, that those burglary convictions were nothing but matters of evidentiary fact for the purposes of Loper's 1947 rape trial, any subsequently discovered invalidity in one of those burglary convictions no more rendered the conduct of Loper's rape trial fundamentally unfair than would the subsequent discovery of new evidence tending, for example, to discredit the testimony of a prosecution witness who was questioned in good faith by the State. The holding in *Gideon* that uncounseled convictions are constitutionally invalid properly leads us to require new trials to sustain any further confinement of persons previously convicted without counsel. But where prior uncounseled convictions were used in a pre-*Gideon* trial solely for *evidentiary* purposes to impeach the defendant, the logic of the rule enunciated in *Townsend* v. *Sain, supra,* counsels that we should treat *Gideon* for what it is *in this context, i. e.,* a decision whose effect on the prior impeaching convictions is properly analogized to the discovery of new evidence. Neither fundamental fairness nor any specific constitutional provision requires that a rule of evidence be made retroactive; consideration for the orderly administration of justice dictates the contrary.

*Burgett* v. *Texas, supra,* on which the plurality opinion relies, should not be read either to require or to justify today's decision. *Burgett* dealt with a post-*Gideon* trial and established that it is a violation of due process to introduce against a defendant evidence of a prior conviction *known at the time of its introduction* to be constitutionally infirm under *existing* law. In regard to Loper's case, the worst that can be said is that 16 years *after* his trial there was an event—the decision in *Gideon*—that, had it pre-dated rather than post-

dated the trial, would have affected an evidentiary ruling by the trial judge.

The rule implicit in the result reached by the Court today does violence both to common sense and to society's interest in the finality of judgments. Only if trial judges were soothsayers could they adhere to it. For under that rule, a prior conviction, admissible for impeachment purposes under state law and fully valid under the Constitution as explicitly interpreted by this Court at the time the conviction is sought to be introduced, becomes retroactively inadmissible if, years after the trial, a decision of this Court renders that prior conviction constitutionally infirm. With all respect, I submit that the United States Constitution does not give this Court the power to impose upon the States any such unmanageable and abstractly based rule as that. Indeed, such a rule is repugnant to the concept of federalism and to the very notions of reasonableness and orderliness embodied in the Due Process Clause. It is a distressing example of pressing the sound doctrine of retroactivity beyond the outer limits of its logic.

If *Burgett* does, indeed, mean what the plurality opinion reads into it, we should overrule that decision without delay. As Mr. Justice Harlan, for himself, Mr. Justice Black and Mr. Justice White, observed, "We do not sit as a court of errors and appeals in state cases . . . ." 389 U. S., at 120.

Mr. Justice Blackmun, dissenting.

The plurality in this case applies *Burgett* v. *Texas,* 389 U. S. 109 (1967), and, seemingly, *United States* v. *Tucker,* 404 U. S. 443 (1972), to proscribe the use of allegedly uncounseled prior convictions of many years ago for the purpose of impeaching the defendant who takes the stand in his own defense. *Burgett* may be claimed to be a natural succeeding step to *Gideon* v. *Wainwright,* 372

U. S. 335 (1963), but its application to Loper's case has aspects, not particularly stressed by the plurality, that are troublesome for me:

1. The resolution of the original statutory rape case came down to a choice, on the part of the jury, between the testimony of the eight-year-old victim and the testimony of Loper. This, of course, is not uncommon in a rape case, but it always provides an element of unsureness. It is the woman's—or the child's—word against the man's. Hanging in the balance is a penalty of great severity. The 50-year sentence imposed on Loper is illustrative and is a tempting target for a reviewing court.

2. Obviously, the Court's familiar remand "for further proceedings consistent with this opinion" is really meaningless in this case. Certainly it does not carry with it the usual meaning and implications. The incident that is the subject of the criminal charge took place 25 years ago. The victim, then eight years old, is now about 33. I suspect that an event which would be vivid at the time for a child has faded, mercifully, in the victim's memory. Retrial, if not impossible, is highly unlikely. The Court's remand therefore actually translates into an enforced state acquittal and release for Loper.

3. The plurality's reliance upon Loper's testimony at the habeas hearings and upon certified records of Mississippi and Tennessee proceedings is not complete. Perhaps the records of the 1931 and 1940 proceedings could be said to support an implication that Loper was not represented by counsel in those cases. But no record at all of the 1932 Mississippi proceeding was presented. And the 1935 recital that Loper appeared "in person" is no more than the customary recital, if properly drawn, for any criminal proceeding when counsel is, in fact, present. As the plurality's footnote 3 reveals, Loper testified as to the absence of counsel at only the 1931 and 1940 proceedings. He said nothing with respect to the 1932 and 1935 proceed-

ings. Thus, for me, the 1932 and 1935 prior convictions stand effectively unchallenged on this record. Surely, as to them, Loper has not sustained his burden of proof.

4. I have more than a mild suspicion that as a practical matter the outcome of the case would have been exactly the same had the priors not been used to impeach Loper's credibility. Yet their use was legally accepted 25 years ago. That use, now held improper by the Court, destroys the conviction irretrievably.

5. Loper's troubles with the law did not cease with his statutory rape conviction in 1947. As the opinion of the Court of Appeals reveals, 440 F. 2d 934, 936, Loper was on parole in 1963 when he was arrested for car theft in Mississippi. While a parole revocation order was awaiting execution, he escaped and was a fugitive for more than a year.

6. I see no need to recede from *Burgett* v. *Texas* at this time, but its application to the circumstances of Loper's case gives me the impression that what appears to be an acceptable principle can be run into the ground when indiscriminately applied. Here again, by impractical application, the plurality has painted itself into a corner. Here again, some realism is needed. See *United States* v. *Tucker*, 404 U. S., at 452 (BLACKMUN, J., dissenting).

We were advised at oral argument that Loper once more is on parole and is working in Texas.* Thus, assuming he behaves himself or, to put it more formally, that he does not violate his parole, the plurality's decision, however it were to go, would not have much effect upon his present freedom. On balance, I feel that THE CHIEF JUSTICE and MR. JUSTICE REHNQUIST, in dissent, have the better of the argument, and certainly the stronger position in the light of the practicalities. I therefore also dissent.

---

*Tr. of Oral Arg. 27, 31–32.

Mr. Justice Rehnquist, with whom The Chief Justice, Mr. Justice Blackmun, and Mr. Justice Powell join, dissenting.

In reversing the judgment of the Court of Appeals, which affirmed denial of federal habeas corpus relief to petitioner, the plurality undertakes to apply the constitutional doctrine of *Burgett* v. *Texas,* 389 U. S. 109 (1967), and *United States* v. *Tucker,* 404 U. S. 443 (1972), to the case where the uncounseled conviction is used to impeach the criminal defendant when he takes the stand in his own defense at subsequent trial. In order to reach this question, of course, the plurality must conclude that the prior burglary convictions obtained many years ago in Tennessee and Mississippi were in fact uncounseled, and that the defendant had not waived the constitutional right to counsel that *Gideon* v. *Wainwright,* 372 U. S. 335 (1963), accords him. Petitioner so testified with respect to the Mississippi convictions at the federal habeas hearing. But the habeas judge, a veteran of more than 20 years' experience as a federal district court judge, found as follows with respect to petitioner's assertions of constitutional error:

> "At the outset it might be stated that petitioner has made false statements under oath, and has testified to a set of facts so roundly and thoroughly shown to be false by unimpeachable evidence that little or no credence may be placed in his own testimony. . . ." (App. 61.)

On the basis of other factual inconsistencies that were resolved against the petitioner, the trial judge made the following general observation concerning petitioner's credibility:

> "As stated at the outset, petitioner has filed innumerable applications for relief. Pound for pound,

> he is probably the most prolific writer of writs to come before this Court. His applications, verified under oath, and his testimony in open court under oath, have been found repeatedly to be completely false." (App. 65.)

It is therefore surprising, at least at first blush, to find the plurality reaching the constitutional question that it decides. I believe the procedural posture in which this case is presented calls for more attention than it receives in the plurality's opinion.

In 1947, petitioner was convicted in a Texas state court of the crime of statutory rape of his eight-year-old stepdaughter. In the course of that trial, petitioner took the stand, and, as appropriate under Texas law, was cross-examined about four prior convictions for burglary, which had been obtained against him in the States of Mississippi and Tennessee during the period from 1931 to 1940. The jury convicted petitioner of the offense, and sentenced him to serve 50 years in the penitentiary. That conviction has long since become final, and indeed petitioner is now on parole.

In the present habeas proceeding, petitioner sought to attack not only the 25-year-old Texas judgment of conviction under which he still serves, but also to challenge the constitutional validity of the Mississippi and Tennessee burglary convictions which vary in age from 30 to 40 years. He introduced certified copies of a 1940 Mississippi conviction, reciting appearances at the trial by the prosecutor and by "the defendant in his own proper person"; a certified copy of the indictment and judgment in a 1935 Tennessee burglary conviction reciting appearances by the prosecutor "and the defendant in person"; and a certified copy of an indictment, judgment, and sentence obtained in Mississippi in 1931, which were silent regarding the presence or absence of counsel. No documentary evidence whatever was introduced with re-

spect to the 1932 Mississippi burglary conviction, which was the fourth such judgment about which he was interrogated in the course of the Texas rape trial.

In addition to such documentary evidence, petitioner in the federal habeas proceeding took the stand himself and testified explicitly that he had not been advised of his right to counsel, nor had he been furnished counsel in the 1931 and 1940 Mississippi burglary convictions. But the testimony of the petitioner in this proceeding was found by the federal habeas judge to be false. (*Supra,* at 498.)

In *Johnson* v. *Zerbst,* 304 U. S. 458, 468–469 (1938), one of the landmark habeas corpus decisions of this Court, Mr. Justice Black said:

> "It must be remembered, however, that a judgment cannot be lightly set aside by collateral attack, even on *habeas corpus.* When collaterally attacked, the judgment of a court carries with it a presumption of regularity. [Footnote omitted.] Where a defendant, without counsel, acquiesces in a trial resulting in his conviction and later seeks release by the extraordinary remedy of *habeas corpus,* the burden of proof rests upon him to establish that he did not competently and intelligently waive his constitutional right to assistance of counsel. If in a *habeas corpus* hearing, he does meet this burden and convinces the court by a preponderance of evidence that he neither had counsel nor properly waived his constitutional right to counsel, it is the duty of the court to grant the writ."

In addition to the very substantial interests in "a visible end to the litigable aspect of the criminal process . . . ," [1] this case presents other unique practical con-

---

[1] *Mackey* v. *United States,* 401 U. S. 667, 690 (1971) (separate opinion of Harlan, J.).

siderations for placing the traditional *Johnson* burden upon the petitioner to establish a substantial constitutional deprivation. In this case, unlike the normal habeas proceeding, not only the underlying state conviction is put in question, but also convictions of another era from other States.

It is a sufficiently difficult task for a federal district court sitting in Texas to review a Texas state criminal proceeding for constitutional error; in that case the Texas state custodian himself is a defendant in the proceeding, all counsel and the district judge are familiar with local Texas criminal procedure, and the State and petitioner both have available such witnesses as may be necessary to augment the record pertaining to the judgment under attack. Whatever evidentiary hearing is held will take place in the general locale where those witnesses who have knowledge of the earlier state proceedings are available to testify.

It is a good deal more difficult for the same Texas habeas court to make a second-level collateral review of judgments of conviction rendered in the state courts of Mississippi and Tennessee. The States that rendered the convictions are not parties to the Texas habeas proceeding, and, of course, have no interest whatever in sustaining the validity of sentences long since served. Neither the Texas District Court nor Texas counsel can be expected to have any familiarity with the vagaries of criminal procedure in Mississippi and Tennessee. If there are any surviving witnesses to the actual court proceedings, which took place from 30 to 40 years ago, they are sufficiently distant from the location of the Texas habeas court as to render their voluntary appearance unlikely, and their compulsion by process impossible.

In *Carnley* v. *Cochran,* 369 U. S. 506 (1962), a case that came here on certiorari to review a judgment of the

Supreme Court of Florida, this Court held that, in the face of a record completely silent on the issue, there was a presumption against waiver of a fundamental constitutional right such as the right to counsel.[2] One need not quarrel with this principle, applied as it was in *Carnley* to the review of a state supreme court refusal to vacate a recent judgment of one of its lower courts, to believe that in the circumstances presented by the instant case the burden of proof prescribed for federal habeas actions in *Johnson* v. *Zerbst, supra,* should remain on the habeas petitioner. This is consistent with the holding last Term in *Kitchens* v. *Smith,* 401 U. S. 847, 848 (1971), in which a petitioner asserted in a state habeas proceeding that his Sixth Amendment rights under *Gideon* v. *Wainwright* had been violated because the State had failed to provide him with counsel in a 1944 proceeding at which time he alleged he was indigent. In reversing the denial of habeas relief, the Court said: "Of course, to establish his right to appointed counsel in 1944, petitioner had the burden of proving his inability at that time to hire an attorney."

Under *Gideon* v. *Wainwright,* the petitioner in the case before us was entitled to the assistance of counsel in each of the Mississippi and Tennessee burglary trials in which he was a defendant. However, even under *Gideon,* the assignment of counsel to every criminal defendant is not mandatory; the defendant may, upon being advised of his right, determine that he does not wish to avail himself of it. Thus, the fact that the transcript of the judgment roll admitted from the Tennessee and Mississippi proceedings indicates in at least two of the four cases that petitioner did not have counsel

---

[2] Carnley was convicted and sentenced on September 19, 1958. On June 16, 1960, the Supreme Court of Florida granted a provisional writ of habeas corpus that was discharged on September 23, 1960. *Carnley* v. *Cochran,* 123 So. 2d 249, 250 (1960).

is not conclusive on the issue of whether his rights under *Gideon* v. *Wainwright* were violated. Under *Johnson* v. *Zerbst,* the burden in federal habeas corpus is upon him to prove to the satisfaction of the federal habeas judge that he did not waive the right to counsel. Here petitioner explicitly testified in a manner that, if the trial judge had chosen to believe him, would indeed have established that he did not waive his right to counsel in the Mississippi proceedings and thus those convictions were obtained in violation of *Gideon* v. *Wainwright.* However, on the basis of his overall assessment of petitioner's credibility, the trial judge declined to believe these self-serving assertions. The uniform doctrine of the cases, both in this Court and elsewhere, is that the finder of fact is entitled to wholly disbelieve the testimony of an interested witness. *NLRB* v. *Pittsburgh S. S. Co.,* 337 U. S. 656, 659 (1949). As I read the memorandum opinion of the District Judge, that is precisely what he chose to do here.

It is true that our grant of certiorari in this case was limited to the question that is decided by the plurality in today's opinion. But the limited nature of the grant is not an advance guarantee that after reading briefs and hearing oral argument, we will be satisfied that the question is properly presented to us. Our duty to avoid constitutional adjudication when narrower grounds of decision are possible is clearly established by such authority as *Ashwander* v. *TVA,* 297 U. S. 288, 345–348 (1936) (Brandeis, J., concurring), and *Rescue Army* v. *Municipal Court of Los Angeles,* 331 U. S. 549 (1947).

Concluding as I do that the necessary predicate for the plurality's constitutional decision is absent, I would dismiss the writ of certiorari as improvidently granted. Since the plurality addresses itself to the merits of the case, I do likewise. I would affirm the judgment of

the Court of Appeals on the ground that petitioner has not satisfactorily met his burden of proof that the Mississippi and Tennessee convictions were obtained in violation of *Gideon* v. *Wainwright,* and therefore that court was correct in affirming the District Court's judgment denying habeas relief.