506 F.2d 416
 UNITED STATES of America, Plaintiff-Appellee,
v.
Dinklus CLARK, Jr., and James Leon Baldwin, Defendants-Appellants.
No. 74-2082 Summary Calendar. *
*Rule 18, 5 Cir.; see Isbell Enterprises, Inc.
v.
Citizens Casualty Co. of New York et al., 5 Cir. 1970, 431 F.2d 409.
 United States Court of Appeals, Fifth Circuit.
 Jan. 13, 1975.
 
 Ural B. Adams, Jr., Memphis, Tenn. (Court-appointed), for Clark.
 Robert G. Gilder, Southaven, Miss. (Court-appointed), for Baldwin.
 H. M. Ray, U.S. Atty., Oxford, Miss., Alfred Morton, III, Asst. U.S. Atty., for plaintiff-appellee.
 Appeals from the United States District Court for the Northern District of Mississippi.
 Before BROWN, Chief Judge, and THORNBERRY and AINSWORTH, Circuit Judges.
 AINSWORTH, Circuit Judge:
 
 
 1
 Appellants were charged with the armed robbery of the Bank of Walls in DeSoto County, Mississippi, on October 19, 1973, in which $57,497 was taken from the bank. Clark and Baldwin were each convicted after a jury trial on one count of violating 18 U.S.C. 2113(d), pertaining to bank robbery and putting in jeopardy the life of any person by the use of a dangerous weapon in connection therewith. Clark was sentenced as a youth offender for a period of up to twelve years under 18 U.S.C. 5017(c) and (d), provisions of the Youth Corrections Act. Baldwin was sentenced to sixteen years' imprisonment. Finding no reversible error, we affirm both convictions.
 
 
 2
 During the course of the trial, bank employees and customers gave differing descriptions of the robbers. While all agreed that a shotgun and a pistol were used in the course of the robbery, there was varied testimony as to which robber had what weapon. Other eyewitness identification differed as to certain details. One witness, Mr. David Zweig, testified that he saw Clark and another defendant, Wyatt, in his service station the day after the robbery, and that they paid for a $378.20 repair bill in cash. Subsequent to the trial, and after Wyatt had been convicted with Clark and Baldwin, Zweig stated in an affidavit that he felt he had mistakenly identified Wyatt. Wyatt's motion for a new trial was granted, and his indictment was subsequently dismissed. Also brought out at trial was the fact that Clark and Baldwin had escaped from custody while awaiting trial on the bank robbery charge. Both appellants raise issues contesting the validity of the eyewitness identification, the use of the evidence of escape, and the court's denial of various requested instructions.
 
 CLARK'S CLAIMS OF ERROR
 
 3
 During selection of the jury, the defendants asked for additional peremptory challenges. The court granted two additional peremptories to both the defendants and the Government. Clark alleges this to be error, pointing out that Fed.R.Crim.P. 24(b) allows for additional challenges only to defendants. Other courts have held that absent a showing of prejudice or making a specific objection predicated on Rule 24(b), such claims will not be recognized on appeal. See United States v. Potts, 4 Cir., 1970, 420 F.2d 964, 964-965, cert. denied, 398 U.S. 941, 90 S.Ct. 1855, 26 L.Ed.2d 276 (injury to appellant not shown); United States v. Projansky, 2 Cir., 1972,465 F.2d 123, 140-141, cert. denied, 409 U.S. 1006, 93 S.Ct. 432, 34 L.Ed.2d 299 (prejudice not shown; no specific objection predicated on Rule 24(b) presented to district court). We need not decide whether the holdings of such cases are applicable, and we do not decide whether there is prejudice inherent in allowing the Government additional peremptory challenges, for the Government used but six peremptories in the jury selection process. Because the Government used only the number of challenges to which Rule 24 entitled it, we are presented with an academic issue and one which we need not decide under the facts of this case.
 
 
 4
 Clark next claims that evidence of his escape from jail was improperly admitted against him. This is without merit, in that we have upheld the admissibility of evidence of flight. United States v. Ballard, 5 Cir., 1970, 423 F.2d 127, 133. The court gave an acceptable charge on the issue, see 1 Devitt and Blackmar, Federal Jury Practice and Instructions 11.18 (2d ed. 1970), and added, at Clark's request, the following: In considering any evidence of flight or concealment, the jury should consider the motive which prompted it.' Citing Austin v. United States, 1969, 134 U.S.App.D.C. 259, 414 F.2d 1155, Clark argues that the court was obligated to fashion an even more extended charge. But the court gave Clark's proposed addition to the charge, and even Austin does not require elaboration on the charge in the absence of a specific request to the court. We find no error in the charge.
 
 
 5
 The next claim of error relates to the admission of David Zweig's identification of Clark as one of the men who appeared in his service station the day after the robbery and paid for a large repair bill with cash. Clark asserts that Zweig's testimony was impermissibly tainted by the fact that Zweig briefly observed Clark in handcuffs during a recess. The court fully considered this issue out of the presence of the jury and then overruled defense objections to Zweig's testimony. The trial court, then, specifically addressed the contention and found no necessity to exclude Zweig's testimony. Further, defense counsel were allowed to thoroughly cross-examine Zweig about the incident. Thus we find no reversible error on this point. See United States v. Davis, 5 Cir., 1973, 487 F.2d 112, 122, cert. denied, 415 U.S. 981, 94 S.Ct. 1573, 39 L.Ed.2d 878 (1974). Additionally, we note that when Zweig withdrew his testimony identifying Wyatt, he stated he had 'no doubt' about his identification of Clark as one of the parties in his station the day after the robbery. We also find no error in the court's refusal to give defendant's requested instructions on identification since the court's instructions on this subject conformed generally to those approved in United States v. Banks, 5 Cir., 1973, 485 F.2d 545, cert. denied, 416 U.S. 987, 94 S.Ct. 2391, 40 L.Ed.2d 764 (1974), and 1 Devitt and Blackmar, Federal Jury Practice and Instructions 11.32 (2d ed. 1970).
 
 
 6
 Finally, Clark complains about the trial court's instructions regarding circumstantial evidence. Clark's requested instructions suggested that the jury was under a duty to be suspicious of circumstantial evidence, and implied that a higher level of proof was required where circumstantial, rather than direct evidence, was involved. The court's instructions read, in part:
 
 
 7
 The law makes no distinction between the weight to be given either direct or circumstantial evidence. But the law requires that the jury, after weighing all of the evidence, whether direct or circumstantial, must be convinced of the guilt of the defendant beyond a reasonable doubt before he can be convicted.
 
 
 8
 The court's instructions were correct interpretations of the law. Once a correct instruction on reasonable doubt was given, the amplification of the charge to discuss circumstantial evidence was within the discretion of the court. United States v. Bayer, 331 U.S. 532, 536, 67 S.Ct. 1394, 1396, 91 L.Ed. 1654 (1947). An additional instruction on circumstantial evidence may have been 'confusing and incorrect.' Holland v. United States, 348 U.S. 121, 140, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954).
 
 BALDWIN'S CLAIMS OF ERROR
 
 9
 One of Baldwin's two assertions on appeal is that the trial court erred in not giving Baldwin's requested jury instruction concerning a defendant's presumption of innocence. Baldwin concedes that what he requested was an elaboration on the court's standard instruction. The differences between the requested and the given instructions seem to us to be more apparent than real. In any case, it is not erroneous for a court to decline to elaborate on a correct instruction.
 
 
 10
 Baldwin's second contention relates to the admissibility of evidence of escape from jail which was introduced at trial and used against both Clark and Baldwin. After trial in the present case, Baldwin was acquitted of the escape charge, it appearing from the evidence that Baldwin was forced to accompany the other three escapees so he would not be able to sound an alarm. Baldwin argues from cases such as Loper v. Beto, 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972) and Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), that reference to a charge of which he was innocent in order to support an allegation of guilt deprived him of due process. We have concluded that, on the facts of this case, reversal is not required.
 
 
 11
 Baldwin's references to the holdings in cases which prohibit using a constitutionally void conviction to impeach a party or to enhance a jail sentence are not in point. Initially, such cases involve the introduction of criminal convictions; only the fact of an occurrence was introduced at the trial below. Moreover, when prior convictions are introduced, they stand as conclusive evidence that the party is guilty of the crimes charged. When evidence of flight is introduced, however, there are no such connotations of certitude or res judicata. Indeed, the instruction on flight given by the court contained the following comment:
 
 
 12
 Whether or not evidence of flight or concealment shows a consciousness of guilt and the significance to be attached to any such evidence of that type are exclusively within your province as the jury. In considering any evidence of flight or concealment, the jury should consider the motive which prompted it.
 
 
 13
 Finally, we would note that the fact of Baldwin's acquittal does not mandate ignoring that which actually occurred. The fact remains that Baldwin did depart prison illegally, that he did not turn himself in voluntarily after his cohorts made good their escape, and that he did not return to prison until recaptured by the authorities. Further, any prejudice which may have been suffered by Baldwin does not require reversal in light of the strong case against him; Baldwin was linked to the crime by an eyewitness who testified that Baldwin was the driver of the get-away van, and by evidence that three days after the robbery, Baldwin purchased a 1974 Cadillac, paying the $7,386.16 purchase price in cash. Thus, on this record, we cannot say that reversible error was committed in allowing evidence of Baldwin's flight from jail to be brought before the jury.
 
 
 14
 Affirmed.