**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Ray LAUGA, Defendant-Appellant.**

**No. 83–3161.**

United States Court of Appeals,
Fifth Circuit.

Feb. 27, 1984.

Rehearing Denied April 9, 1984.

Frank G. DeSalvo (court-appointed), Michele Gaudin, New Orleans, La., for defendant-appellant.

Pauline F. Hardin, Asst. U.S. Atty., New Orleans, La., for plaintiff-appellee.

Before CLARK, Chief Judge, BROWN and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:

Ray Lauga, a former captain with the St. Bernard Parish Sheriff's Office, appeals from convictions for conspiracy to distribute and distribution of morphine, possessing cocaine with intent to distribute and for obstructing justice. Lauga argues that the indictment should have been dismissed for abuse because the government agent's grand jury testimony was misleading and the government used the indictment to gather evidence against Lauga. Lauga further argues that he should be awarded a new trial because for fear the government would introduce prior convictions which were later overturned, he and another witness declined to testify. Finding no grand jury abuse and that the district court did not abuse its discretion in rejecting the motion for new trial, we AFFIRM.

I

Lauga's convictions arise from two narcotics-related incidents. In one the wife of a deceased cancer patient turned over fifteen syringes of morphine to Gordon Noel, a St. Bernard Parish Sheriff's Deputy, expecting the police to properly dispose of them. Noel, however, decided to sell the morphine. He contacted his partner, Paul Campo, who in turn enlisted the aid of Lauga. Lauga sold the morphine to Sylves Ford, who resold it to an undercover agent. In the second incident Lauga had removed cocaine from the Parish's evidence locker and, with Campo's assistance, attempted its replacement when a federal grand jury subpoenaed the original cocaine.

On October 1, 1982 a Grand Jury investigating the St. Bernard Parish Sheriff's Office indicted Lauga on five counts arising from the two incidents, including one count of conspiracy to distribute morphine and two counts of distribution of morphine. He was also indicted for possession with intent to distribute cocaine and for obstruction of justice arising out of the cocaine incident. On October 8, 1982, Campo and Noel were indicted and a superseding indictment was returned against Lauga. Shortly before Lauga's trial on the superseding indictment he was convicted of unrelated marijuana charges. He did not request a continuance or seek a pretrial decision regarding the admissibility of the recent conviction. After his conviction in the present case Lauga was acquitted in a new trial of the marijuana charges.

II

We turn first to the issue of grand jury misuse. Lauga argues that the government misled the grand jury with the testimony of Drug Enforcement Agency Special Agent Dodge to obtain an indictment and drive Ford into a plea agreement thereby obtaining testimony to bolster its case against Lauga. The accused testimony was:

Q. Did Junior Ford, at the time of his arrest, indicate that he received the morphine from Ray Lauga?

A. [Dodge] Yes sir. Statement was made at that time that he received morphine from Mr. Lauga and also implicated several other deputies

from the Sheriff's Office as being connected with that transaction.

Lauga urges that this testimony was misleading in omitting "the fact that Ford had implicated several members of the St. Bernard Parish Sheriff's Office along with Lauga" and by Ford stating "he got the morphine from Ray Lauga." Finally Lauga argues that Dodge didn't tell the grand jury although he knew that Ford had also stated that he received the morphine from a lady in a red truck.

After trial, the district court found that Dodge had not perjured himself and denied Lauga's motion. The day after Ford was arrested Ford told Louisiana State Police Officer Mike Wigginton that "Ray gave me the stuff." Dodge testified that his testimony before the grand jury incorporated Wigginton's conversation with Ford.

■ The district court's finding is not clearly erroneous. Lauga's interrelated claims that the government abused the grand jury by the use of perjured testimony to obtain indictment with the hope that its effect might generate additional evidence are flawed because this grand jury indisputably had probable cause to indict and because of the trial court's finding that Agent Dodge was not guilty of perjury. *See United States v. Cathey,* 591 F.2d 268, 272 (5th Cir.1979), *United States v. Sullivan,* 578 F.2d 121, 124 (5th Cir.1978). That the government hopes that an indictment will generate additional evidence against the person indicted or against others is not abuse. When, as here, there is probable cause, the range of executive discretion to prosecute can properly weigh the possibility that a well-aimed indictment may break other cases. Lauga's argument here is nothing more and we believe it to be without merit.

### III

Lauga argues that he should be awarded a new trial because he and a witness, Lloyd Boda, can now testify free from impeachment by convictions that were overturned after the trial in this case. Lauga asserts that newly found evidence of a witness,

Lauga's ex-wife, resulted in a new trial in the first case and in acquittals for Lauga and Boda. Lauga and Boda did not testify but urge that they would have but for the prior convictions that would have been used to impeach them. These claims were not made until a post-judgment motion for a new trial. At a hearing on that motion the district court stated that he would have allowed the government to introduce the convictions had Lauga testified.

■ Lauga argues that his convictions here are invalid under *Loper v. Beto,* 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972). Absent harmless error, a conviction in which the defendant was impeached by a prior conviction which violated the Sixth Amendment may itself be unconstitutional. *Id.* at 483, 92 S.Ct. at 1019; *Spiegel v. Sandstrom,* 637 F.2d 405 (5th Cir.1981). We have never extended this rule, however, to prior convictions that may be invalid or unreliable for nonconstitutional reasons. As we noted in *Spiegel,* "[w]e perceive a major distinction between a prior conviction appealed on nonconstitutional grounds and one, as here, appealed on the ground of a violation of a Sixth Amendment right to counsel as in *Burgett* [*Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967)] and *Loper.*" *Spiegel v. Sandstrom,* 637 F.2d at 407.

■ The courts in *Loper* and *Spiegel* granted habeas relief because they found a constitutional flaw in the convictions before them. These convictions were in turn unconstitutional because they had incorporated convictions violative of the sixth amendment. Lauga's prior marijuana conviction here, however, was not found to be constitutionally defective under the sixth amendment or any other constitutional provision. That conviction was overturned and he was later found not guilty because of newly discovered evidence. It has long been established in this circuit, however, that new evidence, absent some government impropriety, would not make the prior conviction unconstitutional. New evidence "goes to the merits of the conviction, not to

its legality." *Shaver v. Ellis*, 255 F.2d 509, 511 (5th Cir.1958). *See, Anderson v. Maggio*, 555 F.2d 447, 451 (5th Cir.1977); *see also Townsend v. Sain*, 372 U.S. 293, 317, 83 S.Ct. 745, 759, 9 L.Ed.2d 770 (1963). Similarly, where perjured testimony is used by the government, constitutional implications arise only if government misconduct is shown. *Schneider v. Estelle*, 552 F.2d 593, 595 (5th Cir.1977). *See also United States v. Antone*, 603 F.2d 566, 569 (5th Cir.1979); *Fast v. Wainwright*, 439 F.2d 1162, 1165 (5th Cir.1971). Neither Lauga's marijuana conviction nor those before us were constitutionally invalid. *Loper* and its progeny are inapplicable.

## IV

A district court has wide discretion in its decision on a motion for a new trial, and we review that decision by an abuse standard. *United States v. Simmons*, 714 F.2d 29, 31 (5th Cir.1983), *United States v. Metz*, 652 F.2d 478, 479 (5th Cir.1981). At the core of Lauga's claim is that his and Boda's testimony, if introduced, would have probably resulted in a different verdict. At the hearing on the motion for new trial, the district judge found the evidence against Lauga "overwhelming" but allowed Lauga to proffer for appellate purposes affidavits disclosing what Lauga's and Boda's testimony would have been. These affidavits have never been proffered. Pretermitting any other difficulties with Lauga's motion, we cannot on this record find that the district court abused its discretion.

AFFIRMED.