OPINION OF THE COURT
John Cataldo, J.
By notice of motion dated May 17, 2000, defendant, by Arthur H. Hopkirk of the Legal Aid Society, moves to vacate the judgment entered October 4, 1993, convicting him of criminal sale of a controlled substance in the first degree and sentencing him to an indeterminate prison term of 20 years to life.
Defendant moves for a new trial pursuant to CPL 440.10 (1) (h). He contends that the trial court’s Sandoval ruling, that the People would be allowed to inter alia impeach him with a prior Federal felony conviction if he chose to testify, violated his *202 State and Federal constitutional rights to due process. (US Const Fourteenth Amend; NY Const, art I, § 6.) The due process argument arises from the fact that defendant’s Federal conviction was reversed after his State trial was completed. The . United States Court of Appeals for the Second Circuit found the Federal conviction was obtained in violation of the Fourth Amendment.
In the alternative, defendant moves the court to vacate his sentence, pursuant to CPL 440.20, upon the ground that the sentencing Judge considered the subsequently voided Federal conviction in arriving at his sentence.
The People oppose defendant’s motion on both grounds.
The Judge at defendant’s trial and sentence, Justice Paul Bookson, is no longer sitting in this court. Accordingly, this motion has come before me for determination. In considering the motion, I have reviewed the defendant’s moving papers and annexed exhibits, the People’s affirmation in opposition, defendant’s reply memorandum, the People’s reply to defendant’s memorandum, the court file, the official minutes of the trial record, and the relevant Federal and State case law and statutes.
The relevant facts are as follows:
On March 4, 1993, after a jury trial, defendant was found guilty of criminal sale of a controlled substance in the first degree (Penal Law § 220.43). On April 3, 1993 he was sentenced to 20 years to life imprisonment. That judgment was affirmed on direct appeal on April 22, 1999. (People v Cabassa, 260 AD2d 280 [1st Dept], lv denied 93 NY2d 1015 [1999].)
At defendant’s trial, he moved for a Sandoval ruling. (People v Sandoval, 34 NY2d 371 [1974].) The People sought to question the defendant for impeachment purposes, should he choose to take the stand in his own defense, regarding his prior convictions, which included a prior felony conviction in Federal court. The defendant had pleaded guilty in Federal court on February 19, 1992 to possession with intent to distribute cocaine within 1,000 feet of a school and possession of a firearm during a drug trafficking crime, after having lost his motion to suppress the physical evidence underlying both those charges. In pleading guilty on the Federal case, the defendant entered a conditional plea which provided he could appeal the District Court’s denial of his suppression motion.
In its Sandoval ruling, the trial court allowed the People to elicit the fact of defendant’s prior Federal felony conviction but *203 not the underlying facts. The court’s full Sandoval ruling was that the defendant could be cross-examined as to the fact that he had previously been convicted of two felonies (the Federal one and one State conviction) and one misdemeanor. Defense counsel objected to the court’s Sandoval ruling, informing the court that the defendant was still litigating the validity of the conviction. The court ruled the defendant could be cross-examined upon the Federal conviction as it was then in existence. Defendant did not testify at trial.
At sentencing, the People relied upon the fact of defendant’s Federal conviction in their sentence request. The prosecutor, after discussing the details underlying the Federal charges, went on to inform the court of the date set for defendant’s Federal sentencing and the mandatory mínimums of five years required on each of the two Federal convictions.
The People expressly asked the court to consider the amount of time the defendant would receive on his Federal conviction in determining the appropriate sentence in this case. The Assistant District Attorney stated: “I was going to ask you because I thought the Federal sentence would occur first, I was going to ask you to give a 15 to life consecutive. However, since we can’t do it consecutive to the Federal sentence which did not happen, I ask you to sentence the defendant to 25 to life concurrent with whatever he gets on the Federal case.” (Sentencing minutes, at 12.)
The Judge sentenced the defendant to 20 years to life imprisonment.
On April 21, 1994, the defendant was sentenced on the Federal case to 157 months in prison to run concurrent to the New York sentence. On August 11, 1995, the defendant’s Federal conviction was reversed upon the ground that the evidence against him had been seized in violation of his Fourth Amendment rights. (United States v Cabassa, 62 F3d 470 [2d Cir 1995].)
This CPL 440.10 and 440.20 motion is the proper vehicle for defendant’s current arguments. The Federal conviction was not reversed until after the defendant was sentenced. Thus, these facts do not appear on the face of the record.
The Use of Subsequently Voided Convictions at Trial and Sentencing
In 1967, the United States Supreme Court for the first time considered the question of whether a defendant should be *204 entitled to a new trial where evidence of a prior unconstitutional conviction was placed before a jury. In Burgett v Texas (389 US 109 [1967]), in a trial under a Texas recidivist statute, the prosecution introduced records of defendant’s prior convictions which appeared on their face to have been obtained in violation of the defendant’s right to counsel. The Court ruled that to permit a conviction obtained in violation of Gideon v Wainwright (372 US 335) to be used against a person either to support guilt or enhance punishment for another offense violates the principles of that case and causes the accused to suffer anew the deprivation of his Sixth Amendment right, which the Court noted was a “ ‘specific federal right’.” (Burgett v Texas, supra, at 115.) The Court pointed out that although States are free to provide such trial procedures as they choose, including rules of evidence, they may not infringe upon guaranteed constitutional rights.
In 1972, the Court revisited the issue of the use of constitutionally infirm prior convictions. In United States v Tucker (404 US 443 [1972]), the Court examined whether a sentence could be allowed to stand where the sentencing Judge, in exercising his discretion in sentencing, had given explicit consideration to prior convictions which were later determined to have been invalid under Gideon (supra).
The sentencing Judge in Mr. Tucker’s case, in deciding the length of sentence he would impose within the statutory range, asked an FBI agent who was present in court for information about the defendant’s prior convictions. After hearing the information regarding defendant’s criminal convictions, the court imposed the maximum sentence. Mr. Tucker’s prior convictions were subsequently voided based upon his lack of representation.
Tucker held that a sentence which appeared to take into consideration void convictions is founded at least in part upon misinformation of constitutional magnitude and cannot stand. (United States v Tucker, supra, at 447.)
Shortly after its decision in Tucker (supra), the Court once more returned to the issue of use of prior void convictions. In Loper v Beto (405 US 473 [1972]), upon taking the stand in his own defense, the defendant’s general credibility was impeached with his prior convictions. Loper was charged with the statutory rape of his eight-year-old stepdaughter who was the sole witness against him. The defendant, conversely, was the only witness for the defense. The Court set forth the question presented in Loper as follows: “Does the use of prior, void convic *205 tions for impeachment purposes deprive a criminal defendant of due process of law where their use might well have influenced the outcome of the case?” (Id., at 480.)
Loper (supra) held that the use of constitutionally infirm convictions to impeach a defendant’s general credibility causes a defendant to suffer anew from the constitutional deprivation and violates due process of law. Thus, under the principle set forth in Burgett (supra), the use of a subsequently voided conviction for impeachment is use in support of guilt. (Loper v Beto, supra, at 482.)
Extensions of Burgett, Tucker and Loper
Subsequent to the Supreme Court’s decisions in Burgett, Tucker and Loper (supra), there has been a difference of opinion among the courts as to whether the principles set forth in those decisions should apply to constitutional violations beyond the right to counsel. The majority of courts that have considered the question have ruled in favor of extension.
When considering convictions voided for constitutional defects such as ineffective assistance of counsel or involuntary pleas, the majority of courts have opined that those types of constitutional violations undermine the very reliability of the fact-finding process by calling into question the defendant’s “factual guilt” in the same way as would a Gideon violation. In cases involving constitutional violations raising questions as to “factual guilt” courts have generally ruled for extension. (See D. Brian King, Sentence Enhancement Based on Unconstitutional Prior Convictions, 64 NYU L Rev 1373, for an exhaustive analysis of these cases.)
However, the Federal appellate courts have split on whether the principles underlying Burgett (supra) extend to constitutional violations said to relate to “legal guilt” as opposed to “factual guilt.” Some constitutional violations, such as the Fourth Amendment prohibition against unreasonable searches and seizures, are said to refer to “legal guilt.” A violation of the Fourth Amendment, resulting in suppression of physical evidence, does not call into question the defendant’s factual guilt, but rather, the evidence is suppressed to deter future illegal police conduct.
The question before this court is whether the Supreme Court intended to create a hierarchy of constitutional violations when considering the principles underlying Burgett, Tucker and Loper (supra). I find that such a distinction between constitutional rights was not intended.
*206 Only two Federal circuit cases have directly addressed the question of the extension of the Burgett rationale to Fourth Amendment violations.
In Beto v Stacks (408 F2d 313 [5th Cir 1969]), the Fifth Circuit held that Burgett (supra) extends to convictions invalidated upon Fourth Amendment grounds. In Beto, two of the defendant’s prior convictions were entered into evidence at his trial under a Texas recidivist statute. The defendant was convicted and received an enhanced sentence. Subsequently, one of his prior convictions was declared null and void by a Federal District Court after it was determined that narcotics introduced in his prior trial had been unlawfully seized in violation of his Fourth Amendment rights. Beto concluded that both Fourth Amendment and Sixth Amendment rights are “specific federal rights” as the term was used in Burgett. While acknowledging that Fourth Amendment violations do not affect the integrity of the fact-finding process in the way that a right to counsel violation does, Beto observed that Burgett never sought to create a hierarchy of constitutional violations based upon whether or not they affect the underlying reliability of the voided conviction.
In United States v Penta (475 F2d 92 [1st Cir], cert denied 414 US 870 [1973]), the First Circuit came to a contrary conclusion in a case involving the use of a prior conviction for impeachment purposes at trial. Focusing on the exclusionary rule’s goal to deter illegal police conduct, Penta concluded that Loper (supra) should not be extended to convictions invalidated because of Fourth Amendment violations, as they do not call into question a defendant’s factual guilt. However, Penta’s focus on the reliability of the underlying evidence fails to grasp that it is the existence of the criminal conviction which has been erroneously placed before the jury for its consideration, not the underlying evidence. The conviction, which is the only thing that the jury hears about, was unconstitutionally obtained. In point of fact, if the Trial Judge had ruled that Mr. Cabassa could be impeached with the facts underlying his Federal conviction, this would have constituted a Fifth Amendment violation because his Federal case was still pending on appeal. To require the defendant to waive his right to remain silent on the Federal case which he was still fighting in order to testify on the State case would have been a separate and distinct constitutional violation. (See, People v Chambers, 184 AD2d 716 [2d Dept 1992].) However, where, as in this case, the Sandoval ruling would not have allowed any inquiry into the *207 circumstances underlying the Federal conviction, it did not violate defendant’s Fifth Amendment rights. (See, People v Ramirez, 200 AD2d 377 [1st Dept], lv denied 83 NY2d 857 [1994]; People v Mendez, 197 AD2d 485 [1st Dept 1993], lv denied 83 NY2d 807 [1994]; People v Galvin, 253 AD2d 437 [2d Dept], lv denied 92 NY2d 924 [1998].) Thus, the only question before this court is whether Loper is violated when a jury hears that a defendant has a felony conviction and that conviction was subsequently voided for a violation of the Fourth Amendment as opposed to a violation of the Sixth Amendment or some other constitutional right.
Based upon the Supreme Court’s latest foray in this area, it appears that Burgett (supra) and its progeny have implicitly been extended far beyond right to counsel cases.
In Custis v United States (511 US 485 [1994]), the Court faced the question of whether a defendant could collaterally attack the validity of previous State convictions on constitutional grounds at the time of a Federal sentencing proceeding under the Armed Career Criminal Act, a Federal recidivist statute. Custis sought to challenge his two prior State convictions on ineffective assistance and involuntary plea claims to avoid an enhanced sentence. The Court pointed out that the wording of the Act itself did not expressly provide for a collateral attack on constitutional grounds at the time of sentencing, as some other Federal statutes do (and as our own State’s predicate statute provides). Custis concluded that except where a defendant was claiming a violation of the right to counsel, he could not collaterally attack a State conviction at the time of his Federal sentencing proceeding. The Court recognized that by virtue of its prior decisions such a collateral challenge was available in right to counsel violations but the Court declined to extend this avenue of collateral relief to other constitutional violations. The Court pointed to concerns of ease of administration and finality of judgments. Right to counsel violations are unusual in that they can generally be determined from the face of the record, as it can easily be ascertained if an attorney appeared. Other constitutional violations, such as ineffective assistance, require review of the entire record of the trial as well as pretrial hearings. Custis went on to state, however, that the defendant could seek to have his prior convictions voided in State court or by a Federal habeas corpus proceeding. If Mr. Custis were to succeed in attacking his State convictions on these other constitutional grounds in either State court or upon Federal habeas corpus, he could then seek “re *208 opening of any federal sentence enhanced by the state sentences.” (Id., at 497.1)[1] Custis did not limit this right to seek resentencing to any specific class or classes of constitutional violations.
The Federal Circuit Courts have subsequently interpreted Custis (supra) as entitling a defendant to seek resentencing in a number of contexts, including some beyond those which were raised by Mr. Custis. (See, e.g., United States v Cox, 83 F3d 336 [10th Cir 1996] [sentence for which defendant received additional time due to imposition of criminal history points under sentencing guidelines must be reopened after underlying State conviction voided; however, that same criminal conduct may still be considered upon resentencing for possible upward departure]; United States v Pettiford, 101 F3d 199 [1st Cir 1996] [State conviction voided due to involuntary plea entitled defendant to sentence reduction]; United States v Clark, 203 F3d 358 [5th Cir 2000] [constitutionally insufficient evidence underlying State convictions entitles defendant to resentencing]; see also, 39 Am Jur, Habitual Criminals and Subsequent Offenders, §47 [1998].)
For all of these reasons, I conclude that Tucker’s rationale regarding sentencing proceedings extends to convictions voided on Fourth Amendment grounds.
Likewise, the rationale of Burgett and Loper (supra) extends to prior convictions, used for impeachment purposes, subsequently reversed for Fourth Amendment violations. A defendant’s credibility is impaired in the same way when a jury is told of a prior conviction, whether that conviction violates the Fourth Amendment or the Sixth Amendment. The damage is inflicted by the admission of the existence of a previous conviction alone. (Loper v Beto, 405 US, supra, at 482, n 11.) Thus, a jury, in hearing that a defendant has previously been convicted of a crime, draws the same negative inference against the defendant’s character no matter what constitutional right was later determined to have been violated.
Harmless Error Analysis
Defendant argues that because he did not take the stand after the Sandoval ruling was made, this court cannot review the Loper violation under a harmless error standard, but must instead grant automatic reversal.
*209 The Federal Circuit Courts that have reviewed Loper violations where defendants have testified have consistently applied a harmless error analysis. (See, e.g., Zilka v Estelle, 529 F2d 388 [5th Cir], cert denied 429 US 981 [1976]; United States v Faulkenbery, 472 F2d 879 [9th Cir], cert denied 411 US 970 [1973].) Likewise, harmless error was the standard used by the Second Department in People v Pilgrim (93 AD2d 461 [2d Dept 1983]) in reviewing a Loper violation. In Pilgrim, defendant’s prior conviction was vacated after it had been used to impeach him at trial, when it was learned that his attorney had not been licensed to practice law. Pilgrim noted that the use of harmless error was consistent with Loper’s mandate. (People v Pilgrim, supra, at 463.) The language of Loper (supra) demonstrates that reversal is not granted automatically every time a constitutionally void conviction has been used to impeach a defendant’s credibility. Instead, Loper considered whether the violation “might well have influenced the outcome of the case.” (Loper v Beto, supra, at 480.)
Defendant does not dispute that the courts after Loper (supra) have applied a harmless error standard to Loper violations when a defendant testifies. However, defendant contends that when analyzing Loper violations involving nontestifying defendants a harmless error analysis should not be done.
As noted by defendant, in Federal courts under Federal Rules of Evidence, rule 609 (a) (the Federal equivalent of our Sandoval hearing), a defendant who does not testify may not raise the propriety of the trial court’s exercise of discretion on appeal. (Luce v United States, 469 US 38 [1984].) Luce took the position that to allow nontestifying defendants to appeal a trial court’s discretionary ruling on use of convictions for impeachment would require appellate courts to speculate as to why a defendant did not take the stand. Luce did not involve an error of constitutional magnitude.[2] Defendant argues that when dealing with any constitutional error which results in the defendant’s failure to take the stand, there must be per se reversal. This conclusion is not supported by an analysis of the case law.
Our State courts, unlike the Federal courts, provide for appellate review of trial court rulings regarding impeachment of defendants with their prior convictions, for both testifying and *210 nontestifying defendants. (People v Shields, 46 NY2d 764 [1978]; People v Williams, 56 NY2d 236 [1982].) When reviewing a Judge’s exercise of discretion under Sandoval, a harmless error analysis is employed, whether or not a defendant has testified. (People v Shields, supra; People v Williams, supra; People v Stevenson, 266 AD2d 68 [1st Dept 1999], lv denied 94 NY2d 953 [2000]; People v Holman, 172 AD2d 245 [1st Dept 1991], affd 79 NY2d 986 [1992].) Our courts avoid the concern raised by Luce (supra) as to nontestifying defendants by forbidding reviewing courts to speculate as to why a defendant did not testify.
I can see no basis for deviating from harmless error in this case. Although our courts grant a greater scope of review to Sandoval challenges by including nontestifying defendants, the due process violation is the same, and the Federal courts have made clear that a harmless error standard is to be employed in a Loper situation. Just as it is possible to do a harmless error analysis on a nonconstitutional Sandoval error for a nontestifying defendant, it is possible for this court to review the trial record to determine whether or not the Sandoval ruling in this case constituted constitutional harmless error.
In Chapman v California (386 US 18, 22 [1967]), the Supreme Court set forth the standard to be applied when reviewing constitutional trial errors. The Court declined to adopt a rule of automatic reversal for all such errors. Some constitutional errors are so fundamental as to deny the defendant a fair trial without resort to a harmless error analysis. In New Jersey v Portash (440 US 450 [1979]), the Supreme Court held that the threatened use of defendant’s immunized Grand Jury testimony for impeachment purposes should the defendant take the stand was such an error, requiring reversal without resort to a harmless error analysis even though the defendant did not take the stand. The Court equated use of such immunized testimony to the use of coerced confessions which are inadmissible for all purposes.
I find that this Loper violation, which involves a conviction voided on Fourth Amendment grounds, is not the kind of constitutional error which is so fundamental so as to automatically have denied the defendant a fair trial. In point of fact, the applicability of harmless error analysis further supports the extension of Loper (supra) to all constitutional violations, including Fourth Amendment violations. In this case it is clear, under Loper, that the Federal conviction was constitutionally *211 void and should not have been heard by the jury. The question remains whether there is a reasonable possibility that the error might have contributed to the conviction. (Chapman v California, supra, at 23; Fahy v Connecticut, 375 US 85, 86-87 [1963]; People v Crimmins, 36 NY2d 230 [1975].) Hence, before a Federal constitutional error may be held harmless, the reviewing court must be able to declare a belief that the error was harmless beyond a reasonable doubt. (Chapman v California, supra, at 24.)
Having reviewed the trial transcript as well as defendant’s offer of proof in his moving papers, I conclude that the error in this case was harmless beyond a reasonable doubt. There is no reasonable possibility that the erroneous Sandoval ruling might have contributed to the conviction.
At the trial, Detective Ray Palmero testified to being present when defendant negotiated a sale of two ounces of cocaine to undercover Detective Luis Castro. A tape recording of those negotiations was entered into evidence. During the tape, Castro asks the defendant to give him “a little bit more [than the two ounces] so [Castro] can make a dollar.” Defendant replies, “All right.” Upon delivering the cocaine to the detectives, when asked what had taken him so long to return to the car, defendant states on the tape that “I got, I needed 57. A gram over.” Some of the conversation on the tape was in Spanish and was translated by Detective Palmero. The chemist who analyzed the controlled substance testified at trial that after he tested the substance and determined that it contained cocaine, its remaining weight was 880 grains. He testified that 875 grains is the equivalent of two ounces. This evidence overwhelmingly demonstrated defendant’s knowing sale of two ounces of cocaine. The tape leaves no doubt that the defendant knew he was negotiating not for around two ounces, but for over two ounces, as he acknowledged adding extra cocaine to guarantee it was over two ounces. Additionally, the testimony of the chemist was unrefuted. The defense did not cross-examine the chemist or in any way call into question the presence of over two ounces of cocaine. Accordingly, I find the Loper error was harmless beyond a reasonable doubt. Defendant’s CPL 440.10 motion is denied.
Sentencing
Once a conviction is voided on any constitutional ground, fundamental fairness precludes a sentence from standing where a court has considered the existence of the voided con *212 viction to enhance punishment, whether under a recidivist statute or for purposes of increasing punishment within a statutory range.
Even if Tucker (supra) did not extend to the current situation, which I find it does, I would still find Mr. Cabassa must be resentenced on State law grounds.
Our predicate felony offender statute (CPL art 400) provides a procedure for a defendant to attack and eliminate consideration of a presumptive predicate felony upon the ground that it was obtained in violation of a Federal constitutional right. As noted in the Practice Commentaries to CPL 400.15, the question of how far Burgett (supra) was meant to extend beyond right to counsel violations is moot in New York in the predicate situation due to the clear statutory mandate of “subdivision 7(b) * * * [which] clearly affords the defendant the right to attack and eliminate consideration of a prior conviction obtained in violation of any federal constitutional right.” (Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11A, CPL 400.15, at 260; see also, People v Harris, 61 NY2d 9 [1983].)
The Court of Appeals has expressly recognized that a prior conviction, set aside due to a constitutional violation having nothing to do with the defendant’s actual guilt, may not be considered to enhance a sentence under CPL 400.21 (7) (b). (People v Dozier, 78 NY2d 242, 250 [1991].)
It would be inconsistent with the clear intent of our State’s statutory and common law to hold that a sentencing Judge’s exercise of discretion enhancing a sentence due to a constitutionally void conviction could stand, while on the other hand barring use of the same type of conviction in a predicate sentence.
Moreover, to hold otherwise would allow a sentence to stand which was based, at least in part, on misinformation of a constitutional dimension. Where materially untrue assumptions or misinformation are presented to a court at sentencing, due process is violated and resentencing is required. (People v Naranjo, 89 NY2d 1047 [1997] [court considered speculation by prosecutor that the defendant was involved in an uncharged crime]; Townsend v Burke, 334 US 736, 740-741 [1948] [prisoner sentenced based on materially untrue assumptions concerning his criminal record inconsistent with due process of law]; see also, Johnson v Mississippi, 486 US 578 [1988].) Under Townsend (supra), resentencing is required where the strong possibility exists that the sentence was based in part *213 upon misinformation as to a defendant’s prior convictions. Therefore, resentencing is required in this case where the strong possibility exists that the sentence was based in part upon misinformation as to a defendant’s prior convictions.
Here, the sentencing court had presented to it for its consideration what turned out to be materially untrue information that the Federal conviction would result in defendant being imprisoned for at least 10 years. The People asked the Judge to take the fact of the Federal conviction into direct account in determining what sentence should be imposed. The court allowed the People to extensively discuss the Federal conviction (not merely the underlying facts of the Federal case) and it cannot be said that defendant’s sentence was not directly enhanced, at least in part, based upon the fact of the conviction. (See, United States v Hubbard, 618 F2d 422 [7th Cir 1979].) It bears noting that when the People sought to have the sentencing Judge consider the fact that the defendant was a suspect in a homicide, the Judge expressly refused to hear this information. However, at no time did the sentencing Judge curtail the People’s discussion of the Federal conviction and Federal sentencing proceedings.
For these reasons, due process under Tucker (supra), under our State law, as well as principles of fundamental fairness, requires a resentencing proceeding where the court will not consider the voided Federal conviction. However, this does not mean that at resentencing the court cannot consider the underlying facts of the Federal case, if shown to be reliable. Sentencing courts, unlike the finder of fact, may take into consideration evidence suppressed due to Fourth Amendment violations. (See, People v Estenson, 101 AD2d 687 [4th Dept 1984]; United States v Schipani, 435 F2d 26 [2d Cir 1970], cert denied 401 US 983 [1971]; United States v Atkins, 480 F2d 1223 [9th Cir 1973].) As noted in People v Wright (104 Misc 2d 911, 921 [Sup Ct, NY County 1980]), while a sentence based on an inaccurate criminal record must be reconsidered, that does not immunize the facts underlying the conviction from the sentencing Judge.
Conclusion
Defendant’s motion pursuant to CPL 440.10 (1) (h) is denied. Defendant’s motion pursuant to CPL 440.20 is granted to the extent that defendant will be produced before this court for resentencing in conformity with this decision.

. It bears noting that the Federal “three strikes” statute, 18 USC § 3559 (c) (7), expressly provides for resentencing if a prior conviction, used to enhance punishment, is subsequently found to be unconstitutional.

. One Federal court, while noting that the defendant could not raise a Loper challenge because he had not testified at his trial, went on to state that even if it were to consider the nontestifying defendant’s Loper challenge, it would still find any error to have been harmless. (Stallings v New Mexico, 166 F3d 348 [10th Cir 1998], cert denied 526 US 1075 [1999].)