Peter PALMENTERE, a/k/a Pete Palmentino, Petitioner,

v.

UNITED STATES of America, Respondent.

Alex PRESTA, Petitioner,

v.

UNITED STATES of America, Respondent.

Peter MANDACINA, a/k/a Charles Bivona, Petitioner,

v.

UNITED STATES of America, Respondent.

Joseph MARLO, Petitioner,

v.

UNITED STATES of America, Respondent.

Nos. 19840–1, 20046–1, 20065–1 and 20094–1.

United States District Court, W. D. Missouri, W. D.

Nov. 10, 1972.

Henry L. Graf, Charles C. Shafer, Jr., Howard Chamberlin, Robert J. Mann, Edward M. Tracewell, Kansas City, Mo., for petitioners.

Bert C. Hurn, U. S. Atty., Frederick O. Griffin, Jr., Asst. U. S. Atty., Kansas City, Mo., for respondent.

## MEMORANDUM AND ORDER

JOHN W. OLIVER, District Judge.

All four of these cases involve petitions for the writ of *coram nobis*, which attack various Prohibition Act sentences obtained in the 1920's and 1930's before the Supreme Court's 1938 decision in Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Similar pretrial orders, designed to delineate any areas of relevant factual dispute, were entered in each case. By agreement of counsel, the cases were set for plenary evidentiary hearing to be held on the same day. The parties agreed that their argument of the legal questions presented and the Court's discussion of the cases upon which the respective parties relied would be on a consolidated basis and be considered as applicable to each of the four cases involved.

It is unnecessary to repeat our detailed discussion of all the cases made at the plenary evidentiary hearing. It is sufficient that we direct attention to Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), in which the Supreme Court on June 12, 1972, reiterated Sixth Amendment principles which have been firmly established for over forty years. After quoting extensively from Powell v. Alabama, 287 U.S. 45, 68–69, 53 S.Ct. 55, 77 L.Ed. 158 (1932); Johnson v. Zerbst, *supra*; Gideon v. Wainwright, 372 U.S. 335, 344, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and In re Gault, 387 U.S. 1, 36, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), it was stated in Argersinger v. Hamlin that:

We hold, therefore, *that absent a knowing and intelligent waiver*, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, *unless he was represented by counsel at his trial.* [Ibid, 407 U.S. p. 37, 92 S.Ct. p. 2012]

That case also concluded that:

Beyond the problem of trials and appeals is that of the guilty plea, . . . . Counsel is needed so that the accused may know precisely what

he is doing, so that he is fully aware of the prospect of going to jail or prison, and so that he is treated fairly by the prosecution. [Ibid, p. 34, 92 S.Ct. p. 2011].

United States v. Morgan, 346 U. S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1953), upon which all parties rely, establishes each petitioner's present right to raise the question of whether at the time each of the respective Prohibition Act convictions involved in all four cases were obtained, he was (a) represented by counsel or (b) whether he made a knowing and intelligent waiver of counsel. *Morgan* held:

Under the rule of Johnson v. Zerbst, 304 U.S. 458, 468, 58 S.Ct. 1019, 1024, 82 L.Ed. 1461, decided prior to respondent's conviction, a federal trial without competent and intelligent waiver of counsel bars a conviction of the accused. Where it cannot be deduced from the record whether counsel was properly waived, we think, no other remedy being then available and sound reasons existing for failure to seek appropriate earlier relief, this motion in the nature of the extraordinary writ of *coram nobis* must be heard by the federal trial court. Otherwise a wrong may stand uncorrected which the available remedy would right. Of course, the absence of a showing of waiver from the record does not of itself invalidate the judgment. It is presumed the proceedings were correct and the burden rests on the accused to show otherwise. Johnson v. Zerbst, *supra*, at 304 U.S. at page 468, 58 S.Ct. 1024; Adams v. U. S. ex rel. McCann, *supra*, 317 U.S. at page 281, 63 S.Ct. 281 [87 L.Ed. 268]; cf. Darr v. Burford, 339 U.S. 200, 218, 70 S.Ct. 587, 597 [94 L.Ed. 761]. [Ibid, p. 512, 74 S.Ct., p. 253].

The specific citation to 304 U.S. page 468, 58 S.Ct. 1019 of the opinion of Johnson v. Zerbst is significant. For it was on that page of 304 U.S. that the nature and extent of the burden of proof which rested upon a *habeas corpus*

petitioner was defined. *Morgan*, of course, recognized and established that the same rule was applicable to a *coram nobis* petitioner. On pages 468, 469 of 304 U.S., pages 1024, 1025 of 58 S.Ct. of Johnson v. Zerbst, Mr. Justice Black stated:

If the accused, . . . is not represented by counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or his liberty . . . Where a defendant, without counsel, acquiesces in a trial resulting in his conviction and later seeks release by the extraordinary remedy of *habeas corpus*, the burden of proof rests upon him *to establish that he did not competently and intelligently waive his constitutional right to assistance of Counsel.* If in a *habeas corpus* hearing, *he does meet this burden* and convinces the court by a preponderance of evidence that he neither had counsel nor properly waived his constitutional right to counsel, *it is the duty of the court to grant the writ.* [emphasis ours].

Johnson v. Zerbst also established the rule that "[a] waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." 304 U.S. at 464, 58 S.Ct. at 1023.

The government has suggested various conclusions of law which state generally and broadly that "It is presumed that the proceedings in petitioner's prior criminal trial were correct and proceeded with regularity" and to the effect that the "Petitioner bears the burden of proof on each ground presented in support of his petition, and petitioner has not sustained his burden of proof."

The recent Seventh Circuit case of Woods v. United States, (7 Cir., 1972) 457 F.2d 185, makes clear that the burden of proof principles applicable to an old state conviction obtained in violation of Gideon v. Wainwright is equally applicable to old federal convictions ob-

tained in violation of Johnson v. Zerbst. *Woods* involved an application for writ of *coram nobis* which attacked a 1932 federal felony conviction obtained in the United States District Court for the Eastern District of Illinois. The record was silent in regard to whether the defendant had been represented by counsel. The petition alleged, as do the various *coram nobis* petitions in the four cases here involved, that the petitioner "was not . . . accorded counsel, and that he did not intelligently or otherwise waive that right." The District Court dismissed Woods' petition. The Court of Appeals reversed, holding that its recent decision in a *coram nobis* case involving a state conviction invalid under Gideon v. Wainwright was controlling. The decision referred to was United States v. Lufman, (7 Cir., 1972) 457 F. 2d 165, decided a month before *Woods* was decided. In *Woods* the Seventh Circuit quoted and applied the following language from its earlier opinion in *Lufman:*

> Once a defendant raises the constitutional invalidity of a prior conviction, the government has the heavy burden of proving absence of a constitutional defect or waiver of rights. United States v. Du Shane, 435 F.2d 187, 189–190 (2nd Cir. 1970).

Specifically, that case held:

When the record of a prior conviction is silent as to the presence of counsel, it is presumed that the Sixth Amendment rights of the defendant have been violated. The government must affirmatively prove otherwise. Carnley v. Cochran, 369 U.S. 506, 516, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962); Burgett v. Texas, 389 U.S. 109, 114, 115, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967); Oswald v. Crouse, 420 F.2d 373 (10 Cir. 1969); Losieau v. Sigler, 406 F. 2d 795 (8 Cir. 1969). [457 F.2d at 186].

■ The language in which the Seventh Circuit stated the applicable rule, of course, was almost a paraphrase of the Eighth Circuit's statement of the same rule in Losieau v. Sigler, *supra*, 406 F.2d at 803. The rule was there stated by our controlling court as follows:

> [W]here the record is silent as to whether an accused was furnished counsel at a critical stage and where the accused introduces evidence tending to show that he was not in fact so represented, the burden then shifts to the state to prove, by a fair preponderance of the evidence, that the accused was represented.

The Eighth Circuit recognized in Losieau v. Sigler that the rule we have just quoted is commanded by a fair reading of Burgett v. Texas, 389 U.S. 109, 88 S. Ct. 258, 19 L.Ed.2d 319 (1967). The recent judgment of the Supreme Court in Loper v. Beto, 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972), which cites Losieau v. Sigler with approval, sustains the Eighth Circuit's reading of Burgett v. Texas.

For reasons which it fails to make apparent, the government cites and attempts to rely upon Loper v. Beto and the Supreme Court's per curiam opinion in Kitchens v. Smith, 401 U.S. 847, 91 S.Ct. 1089, 28 L.Ed.2d 519 (1971), to support the notion that the fact "Petitioner [Marlo, age 13 at the time of the conviction involved] has not demonstrated that he was without funds or otherwise unable to employ or retain counsel" requires that "we must assume that if he did not have counsel, it was by choice" and that petitioner Marlo therefore failed to sustain the burden of proof which the government insists applies in all *habeas corpus* and *coram nobis* cases in which the record is silent in regard to whether or not the particular petitioner was in fact represented by counsel.

In Burgett v. Texas it was noted and concluded that "in this case the certified records of the Tennessee conviction on their face raise a presumption that petitioner was denied his right to counsel in the Tennessee proceeding, and therefore that his conviction was void." The

Court then cited the familiar case of Carnley v. Cochran, 369 U.S. 506, 82 S. Ct. 884, 8 L.Ed.2d 70 (1962), to support its holding that "[p]resuming waiver of counsel from a silent record is impermissible." Burgett v. Texas then held:

> To permit a conviction obtained in violation of Gideon v. Wainwright to be used against a person either to support guilt or enhance punishment for another offense (see Greer v. Beto, 384 U.S. 269, 86 S.Ct. 1477 [, 16 L.Ed.2d 526]) is to erode the principle of that case. Words yet, since the defect in the prior conviction was denial of the right to counsel, the accused in effect suffers anew from the deprivation of that Sixth Amendment right. [389 U.S. at 115, 88 S.Ct. at 262]

Loper v. Beto, after quoting the portion of Burgett v. Texas which we have just quoted made reference to United States v. Tucker, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1971), another sequel to Gideon v. Wainwright decided by the Supreme Court during its October, 1971 Term. Loper v. Beto stated the following in regard to *Tucker:*

> Earlier this Term we had before us a case in which it appeared that previous convictions obtained in violation of *Gideon* had played a part in the determination of the length of a convicted defendant's prison sentence. United States v. Tucker, 404 U.S. 443 [92 S.Ct. 589, 30 L.Ed.2d 592]. We there ruled that the Court of Appeals for the Ninth Circuit had been correct in holding that the teaching of *Burgett* required a remand of the case to the trial court for resentencing. [405 U. S. at 481–482, 92 S.Ct. at 1018]

The judgment of Loper v. Beto, of course, concluded that "Unless *Burgett* is to be forsaken, the conclusion is inescapable that the use of convictions constitutionally invalid under Gideon v. Wainwright to impeach a defendant's credibility deprives him of due process of law" (405 U.S. at 483, 92 S.Ct. at 1019). *Burgett* was not forsaken; principles announced in that case were further extended.

The government's suggestion that we rely upon its erroneous reading of the dissenting opinions in Loper v. Beto is untenable. None of the dissenting opinions remotely suggest any change or withdrawal from Sixth Amendment principles followed and consistently expanded since the time of Powell v. Alabama in 1932.

Nor can we accept the government's reading of the per curiam opinion in Kitchens v. Smith. For we read that case as Mr. Justice Stewart read it in Loper v. Beto. He stated that the Court had held in Kitchens v. Smith "that the petitioner on collateral review had sufficiently 'proved he was without counsel due to indigency at the time of his [1944] conviction,' even though, unlike the present case, the petitioner 'introduced no evidence other than his own testimony.' Id. 401 U.S. at 849, 91 S.Ct. at 1090" (405 U.S. at 480, fn. 6, 92 S. Ct. at 1018, fn. 6). We are also impressed with Mr. Justice Stewart's comment in an earlier paragraph of the same footnote in which he stated that:

> The fact that the challenged convictions occurred at a time when, under our decisions, state courts were under no constitutional obligation to provide lawyers to indigent defendants in all felony cases, would make any such finding highly unrealistic, in the face of the documentary evidence and the petitioner's uncontradicted testimony. For, at the time of the petitioner's previous convictions, there was no known constitutional right to be "waived".

We believe that Mr. Justice Stewart's observation is equally applicable to federal convictions obtained at a time when, under the Supreme Court's decisions, federal courts were under no constitutional obligation to provide lawyers to indigent defendants in all felony cases. The deposition testimony of former Assistant United States Attorney Harry L. Thomas, who was familiar

with how criminal justice was administered in the Western District of Missouri from 1926 to 1931, is certainly consistent with that observation.

The government made essentially the same arguments in United States v. Lufman, *supra*, as it makes in the four cases which pend in this Court. Those arguments were tersely answered in footnote 2 on pages 166–167 of 457 F.2d as follows:

The government argued below that "[s]ince the record of defendant's prior felony conviction neither substantiates nor contradicts the defendant's contention the government demands that defendant be held to strict proof of his allegations and that he carry the burden of proof which he has in the first instance. See Johnson v. Zerbst, 304 U.S. 458, 469, [58 S.Ct. 1019, 82 L.Ed. 1461] (1938)."

This is incorrect.

The Seventh Circuit explained why the language of Johnson v. Zerbst could not be given such a tortured construction by stating what was later quoted in *Woods*, which, we, in turn, have quoted above.

In any number of *coram nobis* cases recently filed in this Court in which convictions obtained in the Prohibition Era were attacked, the government recognized that the applicable burden of proof rule was properly stated by the Seventh Circuit in *Lufman*, in Burgett v. Texas ("Presuming waiver of counsel from a silent record is impermissible." 389 U.S. at 114–115, 88 S.Ct. at 262), and in all the Supreme Court cases cited by the Seventh Circuit in *Lufman*. In those earlier cases, the government simply made an appropriate investigation and if it concluded that it could not prove that a particular pre-Johnson v. Zerbst *coram nobis* petitioner had either in fact been represented by counsel or that he had in fact intelligently and knowingly waived that right, the Court, without objection from the government, simply granted the writ and the particular petitioner was thus enabled to straighten out what-

ever problem he may have had with the Kansas City, Missouri, Liquor Department. See, for a recent example of a case involving such factual circumstances, Sam Taibi v. United States, (W.D.Mo., 1971) No. 19531–1, decided November 8, 1971 (unreported).

Some of the past *coram nobis* cases produced by the Kansas City, Missouri Liquor Department computer presented factual situations in which the files and records of this Court showed that the particular petitioner may have in fact been represented by counsel. Convictions, however, were attacked on the ground that the pleas of guilty were not voluntary under principles stated in Kercheval v. United States, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927), and its progeny. Evidentiary hearings, of course, were required and held in those cases. All parties recognized that under the circumstances alleged the burden of proof rested upon the petitioner to establish that his plea of guilty had not in fact been voluntary. Examples of cases involving such circumstances are Bennie Vitale v. United States, (W.D. Mo.) No. 18960–1, decided October 4, 1971 (unreported); Carl David Miceli v. United States, (W.D.Mo.) No. 19130–1, decided November 8, 1971 (unreported); and William Buffa v. United States (W. D.Mo.) No. 19564–1, decided September 9, 1971 (unreported).

None of the present cases involve the question noted but not ruled by the Eighth Circuit in Vaccaro v. United States, (8 Cir., 1971) 449 F.2d 735. Under the factual circumstances there presented it was conceded that Vaccaro had in fact been represented by counsel. The question presented was whether the defendant's plea of guilty was voluntary. The Court of Appeals concluded that Judge Hunter's factual finding in regard to that question was not clearly erroneous. The Court of Appeals stated, however, that "in view of the apparent injustice imposed on Vaccaro by the civil disability enactment" of the City of Kansas City, Missouri's Liquor Control ordinances, it believed it appropriate to

comment that "the life-time attainder imposed by the City appears to be out of all proportion to this 1934 offense, and could well present constitutional problems."

Some of the pre-Johnson v. Zerbst convictions involved in some convictions attacked by the four petitioners in the cases under consideration involve the unique situation of a conflict between various portions of the files and records of this Court. As noted in earlier pre-trial orders entered in each case, it is clear that in all four cases the permanent record of Criminal Docket, kept as a public record in the Clerk's office, does not show that any of the petitioners were in fact represented by counsel at the time of any of their respective convictions. A search, however, of other records kept at the GSA Record Center of other portions of the files and records of the old cases could be said to indicate that the particular petitioner and/or some co-defendant who may have appeared in court the same day as did the petitioner may have been represented by counsel at their time of their convictions.

In some instances, those records do not show who that "counsel" may have been. Nor do they show which of the multiple defendants who may have appeared on a particular day may have been the client of the unidentified lawyer. In another instance, the papers obtained from the Record Center may show only the first name of someone who may have been a member of the Bar. It is apparent, therefore, that some of the convictions involved in the four pending cases reflect slightly different factual circumstances than the convictions involved in earlier coram nobis proceedings which have attacked convictions obtained during the Prohibition Era.

We made clear, however, from what we said from the Bench prior to the plenary evidentiary hearing held in each case that we were confident that resort to any technical application of any evidentiary rule would not be necessary in order to determine the relevant factual circumstances involved in connection with any of the various convictions involved in any of the four cases. The government's suggested findings of fact make clear that in regard to some of the convictions, there simply is no evidence to support a finding that the particular petitioner involved was either (a) represented by counsel or (b) that he had knowingly and intelligently waived the right to counsel.

In regard to petitioner Palmentere's single 1929 conviction in Criminal Case No. 9517, for example, the government's suggested finding of fact implicitly concedes that the petitioner, as he testified, was neither represented by counsel nor did he waive his right to counsel in that case. He is obviously entitled to coram nobis relief on the undisputed factual circumstances presented.

Three convictions are involved in regard to petitioner Presta. The government implicitly concedes by its suggested finding in regard to the 1929 conviction in Criminal Case No. 8981 that petitioner was neither represented by counsel nor did he waive counsel. The factual circumstances concerning petitioner Presta's 1933 conviction in Criminal Case No. 11786 and his 1935 conviction in Criminal Case No. 12819, are substantially similar to those presented in regard to one of petitioner Marlo's convictions in that there is an apparent conflict between the regular Criminal Docket record and some of the records obtained from the Record Center in regard to whether petitioner Presta may have been represented by counsel in connection with those cases.

We find and conclude from all the facts and circumstances that in regard to Criminal Case No. 8981, Criminal Case No. 11786 and Criminal Case No. 12891, that petitioner Presta, as he testified, was neither represented by counsel nor did he make any knowing and in-

telligent waiver of his Sixth Amendment rights in connection with either of those cases.

In regard to petitioner Mandacina's 1935 conviction in Criminal Case No. 13083, the government's suggested finding is to the same effect. In other words, the government does not even contend that it adduced any evidence to contradict court records or the petitioner's testimony that he was not represented by counsel and that he did not waive his right to counsel in that case. Petitioner Mandacina is obviously entitled to relief on the undisputed factual circumstances presented.

In regard to the 1921 conviction of petitioner Marlo in Criminal Case No. 4618 (at the time the defendant was thirteen years old) the government suggests a finding that the petitioner was in fact represented by counsel. That suggested finding is apparently based upon the inconsistent entry in one of the records obtained from the Record Center. As noted earlier, that record conflicts with Criminal Docket book kept in the Clerk's office which reflects that the defendant was not in fact represented by counsel. It also conflicts with the petitioner's sworn testimony.

In regard to Case No. 4618, we find and conclude from all of the evidence that petitioner Marlo was neither represented by counsel nor did he knowingly and intelligently waive counsel. We, of course, base our findings on our acceptance of the petitioner's testimony which was consistent with all the other facts and circumstances adduced in evidence, excepting only one of the papers obtained from the Record Center. That isolated piece of evidence does not state who was supposed to have represented the petitioner.[1]

In regard to petitioner Marlo's conviction in Criminal Case No. 8218, the government conceded by its suggested finding that it adduced no evidence contrary to the testimony of petitioner Marlo that he was not in fact represented by counsel in that case and that he did not in fact waive his right to counsel. We find and conclude that petitioner Marlo was not represented by counsel in connection with either of his two convictions and that he did not intentionally and knowingly waive counsel in regard to either case. He therefore is entitled to relief.

The government presented additional arguments in connection with petitioner Marlo which it did not present in connection with any of the other three petitioners. In its amended answer in the Marlo case, the government alleged that its position would be "that testimony from the petitioner is so inherently incredible as to be unworthy of belief." In spite of the clear and convincing corroborating testimony of James Daleo, Esq., a long-time member of the Bar of this Court, that he had never represented petitioner Marlo in connection with any case, the government suggests that, as a matter of law, "it should be assumed that petitioner had the benefit of representation by Mr. Daleo (Government's Suggested Conclusion of Law, No. 5) and that we should keep petitioner's old Prohibition Era convictions on the books because "the finder of fact is entitled to wholly disbelieve the testimony of an interested witness" (Ibid, No. 10).

The only thing that seemed inherently incredible in regard to petitioner Marlo's case was his allegation that a thirteen year old newsboy could have in fact been convicted of a felony in this Court for having allegedly possessed a "one 60

---

1. Experience in other post-conviction proceedings involving court records which apparently reflect that a particular defendant was in fact represented by counsel teaches that court records may not always accurately state the actual factual circumstances of a particular case. See Part VI of Donnell v. Swenson, (W.D. Mo., 1966) 258 F.Supp. 317, at 333–335, aff'd 382 F.2d 248 (8 Cir., 1967), for an example of a case in which a court record was inaccurate

gallon still complete and 8 barrels of mash" (Count I); that he had manufactured and possessed "5 gallons of whiskey" (Counts II and III of the mimeographed form of indictment). But, that turned out to be true under the undisputed factual circumstances.

The government did not adduce any evidence nor did it state any valid reason to support its claim that the testimony of petitioner was incredible. Indeed, it was undisputed that in spite of carrying the burden of the Prohibition Era convictions he received in the normalcy of the 1920's in this Court, Mr. Marlo has been an eminently successful businessman and that he recently sold his half interest in The Hereford House, one of the city's better steak houses. We find Mr. Marlo's testimony to be most credible. We therefore reject the government's effort to have this Court grasp at straws to sustain the 1920 convictions obtained in violation of the guarantees contemplated by the Sixth Amendment.

All of the parties involved in these four cases have suggested that we make numerous findings of fact and conclusions of law which, in our judgment, present questions which are not necessary to reach. If we had found, for example, that any one of the petitioners had in fact been represented by counsel in connection with one of the convictions involved, or that he had in fact waived his right to the effective assistance of counsel, it would have been necessary to determine whether that particular petitioner's plea of guilty was voluntary under applicable law. We do not believe it is necessary to make any of the additional findings suggested by any of the parties. With the exception of James Daleo, Esq., a member of the Bar of this Court, who testified positively that he did not represent petitioner Marlo, and the testimony of Frank Nigro, whose recollection of the Cotton Club case was somewhat vague, the petitioners were the only persons alive who had any recollection of what took place on the day their guilty pleas were accepted and they were sentenced.

█ We recognize, of course, that former Assistant United States Attorney Harry L. Thomas testified as to his recollection of the general practice of this Court before Johnson v. Zerbst. But we entertain considerable doubt as to whether the general practice of a court may be considered as competent evidence to establish what may have happened in a particular case.

Mr. Thomas testified that as far as he could recall, a defendant was not ordinarily advised of the particular section of the National Prohibition Act which he allegedly violated. (Thomas Deposition in Case No. 19840–1, pp. 19–20). Indeed, the files and records show that some of the indictments and informations did not contain a specific charge of a violation of any specific section of the statute. Mr. Thomas recalled that if counsel were employed and if counsel requested a copy of the indictment it would be given him. But that ordinarily "counsel would not even ask for an indictment" and if a defendant "didn't have counsel, normally it wasn't the practice to give the individual a copy of the indictment" [Ibid, p. 19]. The general practice apparently was that the defendant was advised "you are charged in this indictment with having sold one quart of hootch, moonshine, corn whiskey, or intoxicating liquor at a certain time and place and was asked to plead. If he said 'guilty,' any additional counts would be dismissed and sentence would follow immediately." [Ibid, p. 20].

Mr. Thomas recalled that the Court ordinarily would not ask an individual if he had money to get an attorney unless a plea of not guilty was entered. He testified that "normally, they [Judge Reeves or Judge Otis] would not ask an individual about an attorney or anything unless he pleaded not guilty . . . .. If a man . . . pleaded guilty ordinarily, as I recall it, there would be no questions asked as to

whether he wanted an attorney" [Ibid, p. 26]. Mr. Thomas also indicated that "unless some question was asked, . . . when · an individual would plead guilty, there was no reference made as to what the maximum sentence could be or not be . . . or whether it was a felony or a misdemeanor, normally. . . . [Ibid, p. 27].

Of the thousands of cases processed by Mr. Thomas during his tenure in office, he could not recall a single case in which a defendant had ever made inquiry of whether he was charged with a felony or a misdemeanor. [Ibid, p. 29]. Nor could Mr. Thomas recall a case in which a defendant was advised of his right to a jury trial in connection with proceedings to accept a tendered plea of guilty [Ibid, pp. 34–35].

The petitioners in these *coram nobis* cases testified that the entire proceedings involving their arraignment, their plea of guilty, and their sentence transpired in three to five minutes. Mr. Thomas' recollection was that he thought that may be "pretty fast." He conceded, however, that it could be as little as ten minutes in light of his recollection of "one case I tried, in which we examined three witnesses, examined the defendant through an interpreter, the jury went out and came back and he was sentenced in 30 minutes from the time I began." [Ibid, p. 24].

A random check of the number of Prohibition cases handled by a single district judge during the Prohibition Era establishes that a docket of 50 to 60 prohibition cases on a single day was not unusual. The government made an offer of proof of testimony given by another Assistant United States Attorney whose recollection of the general practice in the Western District of Missouri during his tenure in office between March 16, 1934, and about June 29, 1939, which varied in some detail with the testimony given by Assistant United States Attorney Thomas.

It is not necessary to resolve any apparent conflict in testimony of the two Assistant United States Attorneys, or, on our own motion, to call the living, former employees of the Clerk's office, because it is not necessary that we reach the question of whether any of the petitioners' pleas of guilty were not voluntary under the applicable law. Under the facts as we have found them in regard to each of the four pending cases, we must conclude that all of the convictions of all of the petitioners are void under principles stated in the 1938 case of Johnson v. Zerbst, and that all petitioners are therefore entitled to the *coram nobis* relief prayed for in their respective petitions. Johnson v. Zerbst commands that if a particular petitioner "convinces the court by a preponderance of evidence that he neither had counsel nor properly waived his constitutional right to counsel, it is the duty of the court to grant the writ" (304 U.S. at 469, 58 S.Ct. at 1025). Each of the petitioners carried the burden of proof imposed upon him by law; this Court has no alternative but to follow the law of the land.

The granting of post-conviction relief to one who has been found to have been deprived of his guaranteed right to the assistance of counsel does not reflect either a defective or an unstable system of law. Indeed, quite the opposite is true. For enforcement of the Sixth Amendment's guarantee to the right of counsel was not generally effective until after the Supreme Court decided the cases we have cited. Those Supreme Court decisions, for now over forty years, have long and consistently made clear that the Constitution means what it says when it states in the Sixth Amendment that "in all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."

A system of law which permits the correction of its past denials of funda-

mental rights to particular individuals is one which is consistent with the declaration in the Preamble which states that our Constitution was ordained and established to "establish Justice . . . and to secure the Blessings of Liberty to ourselves and our Posterity." It is a system of law which is based upon the premise that justice requires that a wrong be remedied; not concealed and forgotten.

For the reasons stated, it is

Ordered that pursuant to Rule 52(a) it is concluded that our findings of fact and conclusions of law in regard to each of the four pending cases appear sufficiently in this memorandum opinion and shall be so considered. It is further

Ordered that in the case of Pete Palmentere. a/k/a Pete Palmentino v. United States, Civil Action No. 19840–1, the guilty plea, conviction, judgment, and sentence in United States v. Pete Palmentino, Criminal Case No. 9517, should be and the same are hereby set aside and vacated. It is further

Ordered that in the case of Alex Presta v. United States, Civil Action No. 20046–1, the respective guilty pleas, convictions, judgments and sentences in United States v. Presta, et al., Criminal Cases No. 8981, 11786, and 12819, each should be and the same are hereby set aside and vacated. It is further

Ordered that in the case of Peter Mandacina, a/k/a Charles Bivona v. United States, Civil Action No. 20065–1, the guilty plea, conviction, judgment and sentence in Criminal Case United States v. Fred Bilello and Charles Bivona, Criminal Action No. 13083, should be and the same are hereby set aside and vacated. It is further

Ordered that in the case of Joseph Marlo v. United States, Civil Action No. 20094–1, the respective guilty pleas, convictions, judgments and sentences in United States v. Marlo, et al., Criminal Cases Nos. 4618 and 8218 each should be and the same are hereby set aside and vacated.